**Robert E. McCONNELL, J. Neil Hermann and Irwin D. Neiderman, Plaintiffs,**

v.

**TEXACO, INC., Defendant.**

**Civ. A. No. 88–1501–C.**

United States District Court, D. Massachusetts.

Jan. 2, 1990.

752

Robert P. diGrazia, Pierce, Schneider & Ricci, P.A., Salem, Mass., for plaintiffs.

Robert M. Gault, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Senior District Judge.

This case is now before the court on the defendant Texaco Incorporated's ("Texaco") motion for summary judgment. The plaintiffs in this action, Robert McConnell ("McConnell"), J. Neil Hermann ("Hermann"), and Irwin D. Neiderman ("Neiderman"), are three former employees of defendant Texaco. Plaintiffs initially brought this action in the Superior Court for Norfolk County of the Commonwealth

of Massachusetts. In their original complaint, plaintiffs asserted against Texaco a claim under chapter 93A, section 2 of the Massachusetts General Laws, alleging that Texaco arbitrarily and unfairly denied them severance benefits to which they were entitled under the Texaco Employee Termination Assistance Program–87 ("TETAP").

Texaco petitioned this Court to remove the action to federal court on the basis of federal question jurisdiction because Texaco's employee welfare benefit plan, TETAP, is governed exclusively by the Employee Retirement Income Security Act of 1974 ("ERISA"). This court allowed removal, and Texaco then moved to dismiss the plaintiffs' state law claims on the ground that they were preempted by federal law. In response, plaintiffs moved to amend their complaint to substitute an ERISA claim for their state law claims. Texaco did not oppose plaintiffs motion and this court allowed it. This court also allowed Texaco's motion to strike the jury demand.

In their amended complaint, plaintiffs assert a cause of action pursuant to section 1132(a)(1)(B) of ERISA to recover benefits allegedly due to them under TETAP. 29 U.S.C. § 1132(a)(1)(B). Plaintiffs allege that Texaco's Plan Administrator arbitrarily and capriciously denied them benefits in violation of the mandates of ERISA. Texaco now moves for summary judgment, arguing that there are no genuine issues of material fact to be tried and that upon the undisputed facts, Texaco is entitled to judgment as a matter of law. After thorough review of the depositions, affidavits, exhibits and memorandums submitted by both parties, this court finds no genuine issue of material fact for trial. Upon the undisputed facts, even when viewed in the light most favorable to the plaintiffs, Texaco is entitled to judgment as a matter of law. Accordingly, Texaco's motion for summary judgment should be allowed.

## I.

The following facts are undisputed. Between February 1, 1987 and December 31, 1987, the Texaco Employee Termination Assistance Program ("TETAP") was in effect. Because of certain changes in the petroleum industry which would require the restructuring and discontinuation of certain company operations, Texaco implemented TETAP in an effort to achieve required reductions in the workforce.[1] TETAP contained the following provision regarding eligibility requirements:

> This Program will be available, subject to the conditions contained herein, to certain otherwise eligible non-represented, full-time regular employees, of the Company or its subsidiaries, who have one (1) or more years of active continuous service at the time of separation from the Company, and who are:
>
> a) age 49 and under, or
>
> b) age 50 and over with less than 7 years of Vesting Service who are not eligible to retire under the Retirement Plan and,
>
> c) employed in the Marketing Department of Texaco Refining and Marketing Incorporated and,
>
> d) who are involuntarily terminated by the Company on or subsequent to February 1, 1987, but no later than December 31, 1987.

TETAP granted the Plan's administrator discretionary authority to interpret and to administer the plan: "The Program administrator will perform all duties imposed upon him by the terms of the Employee Retirement Income Security Act of 1974 (ERISA). The decisions of the Program Administrator will be final and conclusive in respect to all questions relating to the Program." From February 1, 1987 through December 31, 1987, the Program administrator of TETAP was John C. Grant ("Grant"), the General Manager of the Employee Relations Department of Texaco,

---

**1.** The TETAP document in which Texaco specified the details of the Plan provided: "... reductions in the workforce will be required. In this regard, and in order to achieve required levels of personnel, non-represented, full-time regular employees, whose employment with the Company or its subsidiaries is severed, may be eligible for separation benefits/allowances under the Texaco Employee Termination Assistance Program–87."

Inc. In construing TETAP's eligibility provision which required that an employee be "involuntarily terminated," administrator Grant determined that employees who voluntarily separated with the company's approval under circumstances which resulted in a net reduction in the workforce would also be eligible for TETAP benefits. As Grant stated in his sworn affidavit, "As the administration of the Program evolved, however, it became apparent that in many cases the required staff reductions could be accomplished through the voluntary attrition of some employees who could then be replaced by other surplus employees who would otherwise have been involuntarily terminated."

By letters dated July 29, August 7 and September 21, 1987, plaintiffs Hermann, Neiderman and McConnell, respectively, each notified Texaco of his intention to resign and requested benefits under TETAP. J.W. Tracy, area manager of Employee Relations for Texaco notified each of the plaintiffs, Hermann, Neiderman and McConnell, by letters dated July 31, August 11, and September 23, respectively, that he was not eligible for TETAP benefits because his separation would not result in a net staff reduction. Each of these letters from Tracy contained the following language:

> Your request has been reviewed. As you know, the Texaco Employee Termination Assistance Program was designed for use in achieving personnel reductions consistent with operational requirements and where positions were determined to be redundant and could be eliminated. It was not meant to be available to an individual whose separation would not result in a net staff reduction. Since this is the situation in your case, we will not be able to extend the benefits of TETAP to you.

Each of the plaintiffs appealed the denial of benefits to the Program Administrator, John C. Grant. After review of each claim, Grant responded in an October 15, 1987 letter to Hermann's attorney, a December 23, 1987 letter to McConnell's attorney, and a December 31, 1987 letter to Neiderman's attorney. In his letter regarding the denial of benefits for Mr. Hermann, Grant stated that "Mr. Hermann voluntarily resigned and, accordingly, is not eligible to participate in this program." In this letter, Grant also responded to the assertion that several other persons who left Texaco under similar circumstances as Mr. Hermann, namely voluntary resignation, received TETAP benefits:

> My investigation has not revealed any situations, similar to Mr. Hermann's where TETAP benefits have been paid. Where benefits have been awarded, there has been a net reduction in personnel as a result of the recipient's separation. The net reduction may not necessarily entail the elimination of the position occupied by the separating employee as his or her position may be filled through internal promotion or transfer. However, there is a net reduction in personnel resulting either directly or indirectly from the separation of an employee under TETAP. In Mr. Hermann's case, he was replaced by a currently employed individual who, in turn, will be replaced by a new hire. Therefore, no net reduction in the workforce will result from Mr. Hermann's resignation.

In his letter regarding McConnell's claim for benefits, Grant directed McConnell's lawyer's attention to the "Introduction" of the TETAP document which sets forth the initial conditions for eligibility, specifically that benefits are available where reductions in the workforce are required, and employees are severed to achieve required levels of personnel. Grant also identified the eligibility requirement that the individual must be "involuntarily terminated by the Company." Grant then explained the reasons that McConnell was denied benefits. First, Grant stated, "Mr. McConnell was not involuntarily terminated by the company, but voluntarily tendered his resignation...." Second, Grant explained that McConnell's voluntary resignation was not with the approval of the company and did not result in a net reduction in the workforce:

> Mr. McConnell was considered an excellent employee by this Company and continued employment was available to him;

there was no desire on the part of the Company to have him separate from service. Moreover, Mr. McConnell was not in a surplus or redundant position and, following his resignation on October 9, 1987, a new employee had to be hired so that his position could be filled.

Grant's letter regarding Neiderman's claim for benefits was substantially similar to the letter sent to McConnell. Similarly, Grant highlighted the workforce reduction and involuntary termination conditions. Grant likewise explained that Neiderman was not involuntarily terminated, but voluntarily resigned. Further, Grant similarly praised Neiderman as an excellent employee, stated that the Company did not approve of his separation from service, and emphasized that after Neiderman's resignation a new employee had to be hired to fill his position. In this letter Grant additionally distinguished Neiderman's situation from the situations of other employees who resigned and received benefits:

> In your referenced letter, you state that there were four employees who resigned and received TETAP benefits, and that your client should be treated in a similar fashion. However, there is a key distinction between the separation of the four employees cited by you and Mr. Neiderman's separation. In the case of each of the four employees identified in your letter, there was a net reduction in the workforce, which was not the case with Mr. Neiderman. As you were previously advised, the reduction required by the program may not necessarily entail the elimination of the position occupied by the separating employee.
>
> For example, in the case of Mr. Strassel, he was replaced by Mr. Ken McGinley who, in turn, was replaced by Mr. J. Tantillo. Mr. Tantillo's job was eliminated in the Houston Credit Department, thereby resulting in a net reduction in the workforce.

After receiving these letters from Tracy and Grant denying them benefits, plaintiffs instituted suit. In their amended complaint, plaintiffs state a claim under ERISA, alleging that TETAP's administra-

tor, John C. Grant, arbitrarily and capriciously interpreted and administered the plan and denied them benefits. Defendant Texaco now moves this court to enter summary judgment in its favor.

## II.

### The Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. Pro. 56(c). The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The moving party may satisfy this burden by showing that there is an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553. Only after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact does the party opposing the motion bear the burden of responding. *Id.* at 321, 106 S.Ct. at 2551; *Adickes,* 398 U.S. at 159–60, 90 S.Ct. at 1609–10. The opposing party may not rest upon the mere allegations or denials in its pleadings, but must respond with affidavits or otherwise to show the existence of a genuine issue for trial. Fed.R. Civ.Pro. 56(e); *Adickes,* 398 U.S. at 159–60, 90 S.Ct. at 1609–10. A dispute about a material fact is a "genuine issue" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Mindful of this standard, this court consid-

ers the defendant's motion for summary judgment.

## III.

### The ERISA Standard

ERISA is a comprehensive remedial statute designed to cure widespread defects in the private pension system and to protect the interests of employees and their beneficiaries in employment benefit plans. *See* H.R.Rep. No. 533, 93d Cong., 2d Sess., *reprinted in* U.S.Code Cong. & Admin.News 1974, 4639, 4639–43. Under ERISA, employee benefit plans are subject to federal regulation. ERISA established uniform standards which employee benefit plans must meet, including reporting and disclosure requirements, 29 U.S.C. §§ 1021–31, and fiduciary responsibility standards, 29 U.S.C. §§ 1101–1114. ERISA applies to any employee benefit plan if it is established or maintained by an employer or employee organization engaged in commerce or in any industry or activity affecting commerce. *See* 29 U.S.C. § 1003(a). An "employee welfare benefit plan" is covered by ERISA and is broadly defined to include:

> [A]ny plan, fund, or program which was ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) ... unemployment, or vacation benefits, ..., or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). Section 186(c) specifically lists "severance benefits." 29 U.S.C. § 186(c). Thus, the employee welfare benefit plan at issue in this case, TETAP, is clearly a plan to which ERISA applies.

Accordingly, TETAP is subject to the standards relating to fiduciary responsibility established by ERISA. ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of ... providing benefits to participants and their bene-

ficiaries...." 29 U.S.C. § 1104(a)(1)(A). A fiduciary must discharge these duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). As administrator of TETAP, John A. Grant qualified as a fiduciary and was required to uphold these fiduciary duties in administering TETAP.

■ In actions challenging the denial of benefits under an ERISA plan which gives the administrator discretion in administering the plan, review is deferential and is limited to determining whether the administrator's action is arbitrary and capricious, or without rational basis. *Firestone Tire and Rubber Company v. Bruch*, — U.S. —, 109 S.Ct. 948, 954–56, 103 L.Ed.2d 80 (1989); *Jestings v. New England Telephone and Telegraph Company*, 757 F.2d 8, 9 (1st Cir.1985); *Govoni v. Bricklayers, Masons and Plasterers International Union of America, Local No. 5 Pension Fund*, 732 F.2d 250, 252 (1st Cir.1984); *Palino v. Casey*, 664 F.2d 854, 858 (1st Cir.1981); *Rueda v. Seafarers International Union of North America*, 576 F.2d 939, 942 (1st Cir.1978). "This standard strikes a balance between excessive judicial intervention in the discharge of administrators' duties, on the one hand, and abdication of traditional judicial control of fiduciaries' actions, on the other." *Morse v. Stanley*, 732 F.2d 1139, 1145 (2d Cir.1984). Accordingly, unless the administrator of TETAP, John A. Grant, acted arbitrarily and capriciously in denying the plaintiffs benefits under TETAP, his decision will not be overturned and the defendant is entitled to judgment as a matter of law.

## IV.

### Application of the Standards

■ Upon thorough review of the pleadings, depositions and affidavits in this case, this court is satisfied that there is no genuine issue of material fact for trial. In responding to defendant Texaco's demon-

stration that no genuine issue of material fact exists, plaintiffs responded with a number of arguments that the administrator's actions were arbitrary and capricious, but failed to show that any issue of material fact existed to be tried. The plaintiffs submitted one affidavit in an attempt to demonstrate that, contrary to Grant's statement in his affidavit, plaintiff Hermann's separation from the company did result in a net reduction in the workforce. The plaintiffs submitted an affidavit by a former employee of Texaco, Reid A. Braga, who stated that he replaced plaintiff Hermann on or about September 9, 1987 as a marketing representative, leaving a prior position as a sales representative. Mr. Braga stated that it was his information and belief that no individual replaced him in his prior sales position until at least December 31, 1988. This affidavit, however, does not demonstrate a genuine issue of fact because it is not sufficient evidence to support a finding that Hermann's separation from the company did result in a net reduction of the workforce. This affidavit does not place in dispute the fact that upon and because of Hermann's separation, a new individual was hired, namely Gregory Jeffers. Thus, there being no genuine issue of material fact, the only question remaining is whether John A. Grant interpreted and administered TETAP and denied plaintiffs benefits under TETAP in an arbitrary and capricious manner.

The plaintiffs first argue that Grant's interpretation of the TETAP eligibility requirement of "involuntary termination" to include voluntary terminations with the approval of the company that result in net reductions in the workforce is arbitrary and capricious. Plaintiff's maintain that this interpretation of the plan is in direct conflict with the express language of the plan and thus indicative of arbitrary and capricious behavior. *See Dennard v. Richards Group, Inc.*, 681 F.2d 306, 314 (5th Cir.1982). This construction of TETAP, however, is not directly contrary to the plain meaning of the plan. The purpose of TETAP was to reduce Texaco's workforce as a result of job elimination or redundancy. The Company originally anticipated that the only way employees might be eligible for TETAP benefits was where they were terminated by the company specifically to achieve these reductions. However, the administrator soon realized that the company could extend eligibility to employees who voluntarily sought to separate from the company where the company approved of the separation and where the separation would achieve the goals of the plan—reduction in the workforce and elimination of job redundancy. Such a broad construction of the Plan allowing a greater number of employees to be eligible for TETAP benefits does not constitute an arbitrary and capricious interpretation of TETAP.

Plaintiffs further assert that even if this interpretation is not arbitrary and capricious in and of itself, the administrator's failure to disclose this interpretation of TETAP to all employees violates the procedural disclosure requirements of ERISA and makes Grant's administration of the plan, interpreted in this manner, arbitrary and capricious. *See* 29 U.S.C. §§ 1021 & 1022(a)(2). Procedural violations of ERISA may be so atrocious that they might infect and render administration of a plan arbitrary and capricious. *See Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353 (9th Cir. 1985). In this case, however, any procedural violation by the administrator in neglecting to disclose this construction of TETAP, which is arguably a modification of the eligibility requirements, was minimal. Unlike in *Blau*, TETAP was not a secret plan, but was fully disclosed and provided a claims procedure. *See id.* Moreover, in determining whether the administrator's failure to give notice of this interpretation constitutes arbitrary and capricious behavior, the administrator's action should be judged in accordance with the principle that notice must be given, subject to the limitations of fundamental fairness. *Palino*, 664 F.2d at 859. The limitations of fundamental fairness were not exceeded in this case. The plaintiffs were not prejudiced by the administrator's failure to disclose this interpretation to them. Even if the plaintiffs had notice of this construction of the plan,

their separations did not result in a net reduction in the workforce and would not entitle them to TETAP benefits.

Second, the plaintiffs argue that Grant's administration of TETAP and decision denying them benefits was arbitrary and capricious because he did not administer the plan consistently and evenhandedly, treating all similarly situated employees alike. There is no evidence, however, to support the plaintiffs' contention. The plaintiffs specifically identify four individuals who voluntarily resigned and received TETAP benefits. The plaintiffs argue that these individuals were similarly situated to them because they voluntarily resigned. Plaintiffs point out that these individuals nevertheless received benefits where the plaintiffs did not. In making this argument, the plaintiffs neglect one important distinction—the separations of the four individuals to which they refer all resulted in net reductions in the workforce. In his affidavit, Grant listed each employee who was voluntarily terminated and allowed TETAP benefits and explained exactly how each employee's separation resulted in a net reduction in the workforce. In contrast, the plaintiffs' separations did not result in net reductions in the workforce. As Grant stated in his affidavit,

> [I]n order to fill that gap, Texaco hired three new marketing trainees, transferred four existing employees into marketing positions and also hired a clerk to replace one of the transferred employees. Two of the new marketing trainees hired, Mark Brady and Paul Neugebauer, replaced McConnell and Neiderman, respectively. The third marketing trainee, Gregory Jeffers, was hired with the intention that he would fill either Hermann's old position or the position vacated by Reid Braga, an existing employee who had previously been transferred to fill Hermann's marketing position. Ultimately, Jeffers was added to the marketing staff to help compensate for the loss of three very experienced marketing representatives (the plaintiffs).

Upon review of the affidavits, depositions and documents submitted, this court is convinced that Grant administered TETAP consistently and evenhandedly, granting benefits to employees who voluntarily resigned where their separation resulted in a net reduction in the workforce and denying benefits to employees whose voluntary resignations did not result in such reductions.

Third, the plaintiffs somehow argue that Grant's administration of TETAP was arbitrary and capricious because it resulted in a mid-year cutoff after which TETAP benefits where not awarded. The fact that by mid-year Texaco had reached its required level of personnel and terminations later in the year were not covered by TETAP because they did not result in net reductions, however, does not render administration of TETAP arbitrary and capricious. This argument by the plaintiffs does not deserve further discussion.

For all the foregoing reasons, this court concludes that John Grant's interpretation and administration of TETAP and his denial of TETAP benefits for the plaintiffs was not arbitrary and capricious. Accordingly, defendant Texaco's motion for summary judgment should be allowed.

ORDER accordingly.

## ORDER

In accordance with memorandum filed this date, it is ORDERED:

1. Defendant Texaco Incorporated's motion for summary judgment is allowed.

2. Defendant's motion to strike portions of deposition testimony is denied.

3. Defendant's motion to strike affidavit of Reid Braga is denied.