Wentworth v. Digital Equipment      CV-93-96-JD   11/28/95 P

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


John H. Wentworth

        v.                                    Civil No. 93-96-JD

Digital Equipment Corp.


                            O R D E R


        The plaintiff, John H. Wentworth, brings this action under

the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. § 1001 et seq., against the defendant, Digital Equipment

Corporation ("Digital"), to recover benefits under the

defendant's severance plan.  Before the court are the plaintiff's

motion for declaratory relief (document no. 25) and the

defendant's motion for summary judgment (document no. 30).


                          Background[1]

        The plaintiff was hired in October 1976 and most recently

served as a Digital Services Unit Manager in the defendant's

Merrimack, New Hampshire, office.  First Amended Complaint ¶¶ 4,

5.  In December 1993, the plaintiff was informed that he had been

selected for involuntary termination under the defendant's

_____

        [1]The court's recitation of the facts relevant to the instant
motion are either not now in dispute or have been alleged by the
plaintiff.

severance pay and benefits plan ("plan").  Id. ¶¶ 4, 14.
Employees were selected for termination according to certain
criteria involving an evaluation of the employee's past
performance as well as an assessment of the type and number of
jobs the defendant wished to continue to fund.  Id. ¶¶ 14, 15.
The plan entitled the plaintiff to receive more than $20,000 in
severance pay and benefits if he signed an agreement and a
release of claims against Digital before February 12, 1993.  Id.
¶ 47.

After learning of his selection for involuntary termination,
the plaintiff received a booklet entitled "Digital Transition
Financial Support Option Program (TFSO) -- Involuntary
Separation" ("TFSO summary"), which described the severance
benefits available to him under the plan.  The TFSO summary
included a section entitled "TFSO and Your Benefit Claim Appeal
Process," which purported to outline the appeal process of the
plan.  It stated:

> If you believe that your rights have been violated
> under TFSO, you may file a written request for review
> which will act as a claim with the Plan Administrator
> within 60 days of the alleged violation.  The
> administrator may be reached by writing [the U.S.
> Benefits Delivery Manager].
>
> The Plan Administrator will decide whether to grant or
> deny your claim.  You will receive a written reply
> advising you of the Plan Administrator's decision
> within 30 days after you file your request for review.
>
> If your claim is denied, you will be given the
> particular plan provisions upon which the denial is

based.  This reply also will explain fully if there is any further action you may take to have your claim approved.

The reply also will inform you of an opportunity to request that the U.S. Employee Benefit Claim Appeal Committee review your denied claim.  This request must be made in writing within 60 days after you receive notice that your claim has been denied a final time.

TFSO summary at 18.

The plaintiff also at some point received a copy of the plan document,[2] which included a section containing language substantially similar to that quoted above.  Plan document art. 9.  Appendix A to the plan document, entitled "Business Plan and Selection Methodology," described the means by which employees could appeal their initial selection for involuntary termination:

Employees who object to the implementation of the selection process will be entitled to appeal the result with respect to themselves only to the U.S. Employee Benefits Manager under the Digital Equipment Corporation Severance Pay and Benefits Plan, an ERISA severance plan, who can hear appeals from the selection results.  The U.S. Employee Benefits Claim Appeal Committee will be the final appeal from any decision of the U.S. Employee Benefits Manager.

Id. app. A, at 1.

At all times relevant to the dispute, the defendant's "open door policy," which had been revised as recently as November

---

[2]The court uses the term "plan document" to refer to the written instrument by which the plan was created.  The TFSO summary purported to be a summary of the plan document.

1991, was in effect.  As it appeared in the Digital personnel handbook, the policy provided:

> It is the policy of Digital to provide a process for all employees that enables them to raise their problems and concerns to appropriate Digital resources, either inside or outside their organization, without fear of reprisal.  It is also the Company's policy to require managers to provide clear, timely and final response to all issues raised by employees in accordance with this policy, or to elevate those issues to the appropriate resource within the Company.  The overall objective of this policy is to continue to make Digital an outstanding place to work for all employees.

Affidavit of Carmelina Commito, August 5, 1994, attach. B (Digital Personnel Policies and Procedures § 6.02 (November 4, 1991)).  The company also distributed an intra-office brochure in November 1991, entitled "An Enhanced Open Door Policy," which included the following among its list of "Open Door Standards":

> Open Door Managers will provide a written response to any issues, problems, suggestions, or concerns raised by an employee or will provide the employee with a status report with an expected completion date within 20 days.

Affidavit of John H. Wentworth, July 26, 1994 ("Wentworth Affidavit"), Ex. A.  The TFSO summary stated that employees could exercise the open door policy during the nine weeks following receipt of their notice of termination and that employees were to "[c]ontact [their] TFSO Plan administrator to understand how to gain access to the Open Door process."  TFSO summary at 23 (anticipated questions about the TFSO Program, no. 29).

4

On or about January 25, 1993, the plaintiff, who sought to challenge his selection for termination rather than accept the severance package, met with his open door policy manager, John O'Donnell. The plaintiff expressed his concern both verbally and in writing that the defendant had not followed company procedure when selecting him for involuntary termination. Wentworth Affidavit ¶¶ 45-46. However, O'Donnell did not inform the plaintiff of other means of challenging his selection for involuntary termination, and the plaintiff did not receive a final response to his open door complaint before February 12, 1993, the deadline for accepting the severance package. Supplemental Affidavit of John H. Wentworth, June 19, 1995, ¶¶ 6-11. The plaintiff never filed a claim with nor contacted the plan administrator to appeal his selection for involuntary termination. Affidavit of Anne Kiernan, Digital U.S. Benefits Specialist, May 19, 1995.[3] The plaintiff did not sign the severance agreement and never received any severance benefits. Wentworth Affidavit ¶¶ 40-48.

---

[3]The plaintiff repeatedly characterizes John O'Donnell as a "TFSO Administrator" and refers to his appeal to O'Donnell as an exercise of his rights under the defendant's "TFSO open door policy." These conclusory references are unsupported by the record. The plaintiff has adduced no evidence to challenge the plaintiff's affidavit indicating that O'Donnell was neither a plan administrator nor in any way connected with administering the appeal process under the plan. See Affidavit of Paul Cornelius, July 21, 1995.

5

Discussion

At the outset, the court must clarify the procedural confusion that the plaintiff's pleadings have created. The plaintiff's complaint seeks, <u>inter</u> <u>alia</u>, a "declaratory judgment and ruling clarifying the plaintiff's right to plan benefits, pursuant to ERISA § 502(a)." First Amended Complaint at 11. Although § 502(a) permits beneficiaries to bring an action to "clarify rights to future benefits under the terms of [an ERISA-governed] plan," 29 U.S.C. § 1132(a)(1)(B), the plaintiff's "motion for declaratory relief" requests declaratory relief under 29 U.S.C. § 1132(3), a provision that does not exist. Moreover, to the extent that the plaintiff's "motion for declaratory relief" is an attempt to amend or supplement the plaintiff's first amended complaint, it has been filed in a manner inconsistent with Rule 15. Despite these procedural irregularities, however, the court has reviewed the allegations and legal arguments advanced in the plaintiff's submissions and considers them in conjunction with the plaintiff's objection to the defendant's motion for summary judgment.

The defendant argues that it is entitled to summary judgment because the plaintiff neither appealed his selection for involuntary termination through the appropriate channels nor signed the severance agreement before the applicable deadline,

6

and thereby forfeited his rights to receive severance benefits. The plaintiff asserts that the defendant denied him a plan benefit by failing to respond to his complaint under the Digital open door policy, which the plaintiff contends was part of the plan, and thus deprived him of his right to receive severance benefits.[4]

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 113 S. Ct. 1845 (1993)), cert. denied, 115 S. Ct. 56 (1994). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

[4]The plaintiff appears to ground at least part of his theory of liability on his allegation that Digital breached its fiduciary obligations under ERISA § 509. See First Amended Complaint ¶ 53. However, his reliance on fiduciary liability is misplaced. The declaratory and equitable relief that the plaintiff seeks is available without regard to the defendant's fiduciary responsibility. See 29 U.S.C.A. § 1132(a)(1)(B), (a)(3). Further, extracontractual damages based on breach of fiduciary duty, to the extent that the plaintiff seeks them, are not available to individual beneficiaries under § 509. See Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140 (1985) (recovery for violation of § 1109 inures to benefit of plan as whole).

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the plaintiff, "`indulging all reasonable inferences in that party's favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)), cert. denied, 112 S. Ct. 2965 (1992). However, once the defendant has submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

ERISA requires that all employee benefit plans be established and maintained pursuant to a written instrument, 29 U.S.C.A. § 1102(a)(1) (West 1985), and communicated to beneficiaries through a summary plan description ("SPD"), id. § 1024 (West 1985 & Supp. 1995). The written instrument requirement serves two of the primary goals of ERISA: informing

8

employees of the benefits to which they are entitled, and providing some degree of certainty in the administration of benefits. See, e.g., Biggers v. Wittek Indus., 4 F.3d 291, 295 (4th Cir. 1993). These goals have formed the basis for courts' strict adherence to, and refusal to modify, the express terms of employee benefit plans. See, e.g., Law v. Ernst & Young, 956 F.2d 364, 370 (1st Cir. 1992) (distinguishing between non-actionable claims of estoppel based on oral representations that modify benefit plans and actionable estoppel claims based on oral representations that merely interpret existing terms of benefit plans). Courts interpreting the provisions of ERISA-governed benefits plans must use "common-sense canons of contract interpretation," Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 585 (1st Cir. 1993) (quotation marks omitted), and accept the plain meaning of unambiguous terms, Bellino v. Schlumberger Technologies, Inc., 944 F.2d 26, 29-30 (1st Cir. 1991).

The policy goals requiring strict adherence to the terms of ERISA benefit plans also impose a restriction on the source of terms that can form the contract between employer and beneficiary. Absent fraud on the part of a fiduciary and assuming the existence of an SPD or a plan document, materials other than an SPD or a plan document cannot provide the terms of

9

an employee benefit plan.  See Alday v. Container Corp. of Am., 906 F.2d 660, 666 & n.15 (11th Cir. 1990), cert. denied, 498 U.S. 1026 (1991); Moore v. Metropolitan Life Ins. Co., 856 F.2d 488, 492 (2d Cir. 1988).  Where the SPD and plan document conflict, an employee is entitled to rely on the terms of the SPD.  E.g., McKnight v. Southern Life & Health Ins. Co., 758 F.2d 1566, 1570 (11th Cir. 1985); Kaiser Permanente Employees Pension Plan v. Bertozzi, 849 F. Supp. 692, 698 (N.D. Cal. 1994); see also Bachelder v. Communications Satellite Corp., 837 F.2d 519, 522 (1st Cir. 1988).

The plaintiff's claim rests on his assertion that the defendant denied him a benefit under Digital's severance plan -- an open door review of his selection for involuntary termination.  However, Digital promulgated its open door policy in its personnel manual and in an intra-office brochure, rather than through an SPD or a plan document.  Further, the plaintiff has not alleged fraud or the absence of an SPD or a plan document.  The court finds that the open door policy, as promulgated through the Digital personnel manual and intra-office brochure, could not have been a term of the employee benefit contract between the plaintiff and the defendant.

However, the court also must look to the terms of the plan to determine whether the plan included the open door policy.

10

Because the court finds the TFSO summary to be an SPD within the meaning of 29 U.S.C. § 1022, it considers both the TFSO summary and the plan document to discern the terms of the plan, resolving any conflicts in favor of the TFSO summary.

The section of the TFSO summary entitled "TFSO and Your Benefit Claim Appeal Process" and the analogous language in the plan document clearly directed beneficiaries who felt that they were denied their rights under the plan to contact the plan administrator. The plaintiff has not argued that this section permitted an aggrieved employee to file a claim through Digital's open door policy. Accordingly, the court finds that this section did not incorporate the defendant's open door policy.

The plaintiff argues that the specific appeals process set forth in the TFSO summary applied only to beneficiaries who were denied their rights to benefits, rather than those beneficiaries who contested their selection for involuntary termination, and that "the way initially to challenge being selected for TFSO [was] through the TFSO Administrator and the open door review." Plaintiff's Objection to Motion to Summary Judgment at 5. The argument is unavailing. The plan document expressly stated that employees wishing to challenge their selection for involuntary termination were to do so through the plan administrator. This requirement was fully consistent with the appeal process set

11

forth in the TFSO summary, which at best was silent on the issue of challenging the selection process for involuntary termination. Moreover, the question-and-answer section of the TFSO summary directed beneficiaries seeking to take advantage of the open door policy to contact the plan administrator first. The court finds that the plain language of the plan document requiring that appeals be lodged with the plan administrator is controlling, and concludes that the plaintiff was not denied a plan benefit. Because there is no genuine dispute that the plaintiff failed either to contact the plan administrator or to sign the severance agreement before the applicable deadline, the defendant is entitled to judgment as a matter of law.

<u>Conclusion</u>

The defendant's motion for summary judgment (document no. 30) is granted. The plaintiff's motion for declaratory relief (document no. 25) is moot. The clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

November 28, 1995
cc: Francis G. Murphy Jr., Esquire
    David C. Casey, Esquire
    Steven M. Gordon, Esquire

12