**George SPANOS, Plaintiff,**

v.

**The TJX COMPANIES, INC., Continental Casualty Company, Defendants.**

**No. CIV.A. 00–12570–RBC.[1]**

United States District Court,
D. Massachusetts.

Sept. 19, 2002.

---

1. On July 13, 2001, this case was referred to the undersigned for all purposes including trial and the entry of judgment pursuant to 28 U.S.C. § 636(c).

Margaret A. O'Reilly, Belmont, MA, for Plaintiff.

Jean M. Kelley, Morrison, Mahoney & Miller, Boston, MA, for Defendants.

### MEMORANDUM AND ORDER ON MO-TION FOR SUMMARY JUDGMENT OF DEFENDANTS, THE TJX COM-PANIES, INC. AND CONTINEN-TAL CASUALTY COMPANY (# 16) AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (# 22)

COLLINGS, United States Magistrate Judge.

### I. Introduction

Plaintiff George Spanos ("Spanos"or the "plaintiff"), a former employee of The TJX Companies, Inc. ("TJX"), filed a complaint against TJX and Continental Casualty Company ("Continental Casualty")(collectively, the "defendants") alleging that the defendants denied him long-term disability ("LTD") benefits, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA").

On March 8, 2002, the defendants filed a motion for summary judgment (# 16) and a supporting memorandum of law with a statement of undisputed facts (## 18, 19)[2] . In response, on April 2, 2002, the plaintiff submitted the following pleadings: his own motion for summary judgment (# 22), a supporting memorandum (# 23), a "Statement Controverting Defendant's [sic] Statement of Undisputed Facts", and his own statement of undisputed facts (# 25). On April 19, 2002, the defendants filed a response to the plaintiff's statement of undisputed facts (# 27), a response to the plaintiff's motion for summary judgment (# 28) and a motion to strike the exhibits attached to the plaintiff's statement of undisputed facts. Defendants then filed a reply memorandum to plaintiff's opposition to defendants' motion for summary judgment (# 45). For the reasons stated below, the defendants' motion for summary judgment is denied and the plaintiff's motion is also denied, and I will remand this case in its entirety.

### II. The Facts[3]

From 1975 to April 3, 1999, the plaintiff was employed by TJX as a quality inspec-

---

**2.** In the official docket of the case, entry # 18 is incorrectly listed as "Statement of Indisputed Facts by George Spanos re: motion for summary judgment." Entry # 18 is actually the Statement of Undisputed Facts pursuant to Local Rule 56.1 in support of Motion for Summary Judgment of Defendants, The TJX Companies, Inc. and Continental Casualty Company. Plaintiff's statement of undisputed facts is docket entry # 25 and is entitled "Plaintiff's Statement of Undisputed Facts pursuant to Local Rule 56.1 in support of Plaintiff's Motion for Summary Judgment."

**3.** Unless otherwise indicated, all facts herein are undisputed.

tor clerk. (R. 27, 83)[4] The plaintiff's job involved using a telephone, entering information into a computer, writing information on forms, attaching paperwork to garments and moving trolleys that ride on rails. (R. 105)

On or about April 3, 1999, the plaintiff stopped working and filed for short-term disability benefits through a Medical Disability Claim Form, dated April 7, 1999. (R. 36–37) The plaintiff was approved for and was paid short-term disability benefits under the FlexPlus Plan (the "Plan") for the period April 4, 1999 to October 9, 1999. (R. 83) The Plan is an employee welfare benefit plan as defined by ERISA. (SPD at 1, 5) Moreover, the SPD is written to conform with ERISA. (SPD at 1) The plaintiff received weekly benefits in the amount of $301. (R. 83)

The Plan provides, inter alia, that all "Disability benefits are paid weekly, bi-weekly, semi-monthly, or monthly, whichever applies, immediately after We [Conti-nental Casualty Company] receive due written proof of loss." (R. 15, 18) The Plan has two phases of LTD benefits. (R. 164) Under the first phase, which lasts for the first 24 months of long term disability, benefits are payable if the employee "is unable to do the essential duties of [his] own occupation, due to sickness or accidental injury." (R. 164)(emphasis in original) Benefits are payable in the second phase, beyond 24 months, if the employee is "unable to work at any occupation, [he is] or could reasonably become qualified to do by education, training or experience." (R. 164)(emphasis in original) No benefits will be paid if a participant fails to provide "due written proof" of disability in the form of an application for LTD benefits that includes a LTD Employee's Statement and a Physician's Statement within 90 days after the end of the benefit elimination period. (R. 18, 163) In the SPD, it states that CNA[5], on behalf of TJX, administers the Plan vis-à-vis long term disability benefits. (SPD at 3)

4. Unless otherwise noted, citations in the fact section are to the record submitted by the parties and are referenced as R.___. The parties have requested, and the Court has agreed, that the decisions rendered in this case will be based solely on the record submitted by the parties, which includes the Partial Record for Judicial Review submitted on November 26, 2001(# 14) and the documents filed with the March 8, 2002 Assented To Motion of Defendants to Expand the Record for Judicial Review on Summary Judgment (# 15). I note that both the plaintiff and the defendants attempted to supplement (without agreement from the other side) the supposedly agreed-upon record. The plaintiff submitted physician profiles for Drs. Schellner and Blaustein, a 12/29/00 letter from CNA to the plaintiff's attorney and excerpts from Harrison's Principles of Internal Medicine (See attachments to ## 23, 25). The defendants moved to strike the plaintiff's exhibits (see Motion of Defendants...to Strike Exhibits.... (# 29)) yet nevertheless themselves submitted two supplementary affidavits purportedly to authenticate certain documents that are already part of the agreed-upon record. I will not consider the defendants' affidavits since all of the "authenticated" documents are already in the record. And, I will not consider the additional documents submitted by the plaintiff, thereby granting the defendants' motion to strike. (See Margin Endorsement, dated September 19, 2002 on # 29).

However, on or about July 31, 2002, I requested that the parties (through the defendants' counsel) submit a full copy of the so-called Summary Plan Description ("SPD"), discussed in more detail below. Excerpts from the SPD were already part of the agreed-upon record. Because I needed to review the entire SPD in order to render a decision on the instant motions, I consider the entire SPD to be part of the record. The SPD is cited in this Memorandum and Order as "SPD at ___".

5. Continental Casualty is a CNA "Stock Company." (R. 2)

Between April 7, 1999 and August 10, 1999, the plaintiff submitted seven claim forms in connection with his short term disability benefits. (R. 36, 38, 48, 53, 56–58) One of plaintiff's doctors, a Dr. Jonathan Adler, provided TJX with updates on the plaintiff's condition through numerous Medical Claim Form Extension filings. (R. 40, 48, 53, 56–58, 60) On May 28, 1999, Dr. Adler prepared a report in which he stated that the plaintiff suffered not only from chronic fatigue and sero negative rheumatoid arthritis, but also from ankylosing spondylitis.[6] (R. 40) Dr. Adler further reported that the plaintiff was "unable to function presently." (R. 40) In each of the Claim Form Extensions, Dr. Adler stated that the plaintiff suffered from chronic fatigue and sero negative rheumatoid arthritis. (R. 48, 53, 56–58)

On September 13, 1999, CNA received the plaintiff's LTD application. (R. 70) That application included TJX's LTD Employer's Statement (R. 83), the plaintiff's Physician's Statement (R. 86–87), and the plaintiff's LTD Employee's Statement (R. 84–85). In the Physician's Statement dated August 25, 1999, Dr. Adler described the plaintiff's symptoms as "fatigue" and "back pain" and under the section marked "Diagnosis" Dr. Adler wrote "Seronegative Rheumatoid arthritis Chronic Fatigue."[7] (R. 86) With respect to physical limitations, Dr. Adler stated that "lifting should be avoided; prolonged standing should be avoided." (R. 87)

By letter dated October 29, 1999, CNA informed the plaintiff that his claim for LTD benefits was denied on the grounds that there was no objective medical information in the medical records provided by the plaintiff to demonstrate that his condition prevented him from performing his job as a quality inspector. (R. 113) On or about December 17, 1999, the plaintiff appealed CNA's decision. (R. 125)

The plaintiff sent his appeal to a Mr. Frank Martinko of CNA. (R. 125) On December 27, 1999, Mr. Martinko wrote to the plaintiff's attorney acknowledging receipt of the letters from the various doctors and informing him that "no additional medical information was received along with [the] letters to allow for a review of this claim." (R. 131) On February 10, 2000, CNA, through Cheryl Sauerhoff, a CNA Appeals Committee Member, again wrote to the plaintiff's attorney, stating that it was upholding the previous denial of benefits because:

the medical record documentation does not support the severity of any condition that would continue to preclude work activity throughout the elimination period and thereafter....[W]e must have documentation that enables us to determine functional impairments in the activities of daily living and job related activities. There is no detail of any functional impairments or detail of how this discomfort prevents [the plaintiff] from performing his activities of daily living or his occupational duties. There is no continuous detail of the "pain" symptomology as to the duration, frequency or intensity....There is a "paucity of findings on physical examina-

---

6. I have reviewed all of the medical records submitted by the parties but reference and cite from only those records that provide relevant factual background.

7. I note that many of the medical records submitted are difficult to read. When the parties have not disputed what the records say, I accept their version; where there is a dispute over what a particular record says, I have done my best, when possible, to decipher it.

tions" as stated by Dr. Adler on 11/10/99.

(R. 133)

By letter dated May 10, 2000, the plaintiff requested a reconsideration of the CNA Appeals Committee's determination to uphold the denial of LTD benefits. (R. 135) Enclosed with that letter was a Notice of Award from the Social Security Administration ("SSA") dated December 26, 1999 stating that the plaintiff became disabled under the rules of the Social Security Disability program on April 4, 1999 and was therefore eligible for disability benefits beginning in October, 1999. (R. 138)

### III. The Claims

Both the plaintiff and the defendants, claiming that they are entitled to judgment as a matter of law, have moved for summary judgment based on the purported lack of any genuine issue of material fact. The parties dispute, however, what legal standard the Court should apply in reviewing CNA's denial of LTD benefits to the plaintiffa de novo standard or an "arbitrary and capricious" standard. The plaintiff argues that CNA's decision should be reviewed de novo but that even if the Court uses the arbitrary and capricious standard, CNA's decision denying the plaintiff long term disability benefits should be overturned. The defendants assert that the correct standard is the arbitrary and capricious one and that CNA's decision must stand because CNA's decision was neither arbitrary nor capricious. Because the parties' motions are intertwined and are premised on the same legal basis, I rule on both motions in this Memorandum and Order.

### IV. Discussion

As stated above, this case is governed by ERISA because the Plan is an employee benefit plan as defined and governed by ERISA. Title 29 U.S.C. § 1002(1) & (3), Title 29 U.S.C. § 1003(a). In deciding the instant motions, I must first determine the applicable standard to use in reviewing CNA's denial of LTD benefits to the plaintiff. In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court addressed the issue of the applicable standard of review in a denial of benefits case, holding that "a denial of benefits under § 1132(a)(1)(B) must be reviewed under a de novo standard unless the benefit plan expressly gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms." 489 U.S. at 115, 109 S.Ct. 948.

Thus, under Firestone, it appears that I must first determine whether the Plan in this case gave the administrator discretionary authority to determine eligibility for benefits or construe the terms of the plan. If so, then I must review CNA's decision "only to determine whether that decision was arbitrary and capricious." *Recupero v. New England Telephone and Telegraph Co.*, 118 F.3d 820, 828 (1st Cir.1997). That is, the First Circuit "has interpreted the Firestone rule 'to mean that a benefits plan must clearly grant discretionary authority to the administrator before decisions will be accorded the deferential, arbitrary and capricious, standard of review.'" *Guarino v. Metropolitan Life Ins. Co.*, 915 F.Supp. 435, 443 (D.Mass.1995)(quoting *Rodriguez–Abreu v. Chase Manhattan Bank*, 986 F.2d 580, 583 (1st Cir.1993)); see also *Kiley v. Travelers Indemnity Co. of Rhode Island*, 853 F.Supp. 6, 9 (D.Mass. 1994)("a deferential standard of review is appropriate in the event [a plan administrator] has discretionary authority under the plan."); *McConnell v. Texaco, Inc.*, 727 F.Supp. 751, 756 (D.Mass.1990)("In actions challenging the denial of benefits under an ERISA plan which gives the administrator discretion in administering the plan, review is deferential and is limited to determining whether the administrator's action

is arbitrary and capricious, or without rational basis."). If I determine that the Plan does not give the administrator discretionary authority, then I must review the denial of benefits under a de novo standard.

Not surprisingly, the parties disagree as to whether the Plan accorded the administrator the requisite discretion. The defendants argue that "the Plan Document sets out that CNA, as the claims administrator [,] shall have discretionary authority to determine eligibility for benefits. The Plan Document grants full discretion to CNA wherein it states that CNA shall...pay claims after it receives 'due written proof of loss.'" (#19 at 3) The plaintiff, on the other hand, asserts that the Plan document "contains no discretionary language with respect to the adequacy of the notice or the proof" and that the "due written proof of loss" language "is in the imperative, and does not confer the necessary discretion on the plan administrator." (#23 at 2–3)

Interestingly, the parties do not appear to dispute who the administrator is vis-à-vis LTD benefits and what the proper entity is to decide an appeal of the denial of LTD. I find, however, that this issue is an important one and one that at least must be addressed before I render a decision on these motions. Before **what** discretion, if any, has been granted, it must be determined to **whom** any discretion has been granted.

The SPD is ambiguous as to who the administrator actually is, at least with regard to LTD.[8] On the one hand, it appears that as to LTD, the Plan is administered by CNA because the SPD says that for all LTD benefits, "the Plan is administered by an insurance company and is underwritten by" CNA. (SPD at 3) On the other hand, the administrator of LTD could be the "The Employee Benefits Committee of The TJX Companies, Inc." (emphasis in original) because the Committee is defined as the entity "designated as the administrator of FlexPlus." (SPD at 167) FlexPlus is defined to include "medical, dental, life, accidental death and dismemberment, short term disability and long term disability benefits." (SPD at 3)(emphasis added) Thus, there is a clear conflict within the SPD as to who the administrator of LTD benefits is—CNA or the Committee. I note this conflict for background and to highlight the inherent conflict in the SPD. Given the ambiguity of the SPD, TJX would be wise to revise the SPD to prevent future confusion. I need not, however, resolve the conflict in the wording of the SPD over who is the administrator of LTD in order to decide the instant motions for summary judgment because there is another matter which is dispositive-which entity has been designated as the authority to pass on the plaintiff's appeal.

The SPD unambiguously directs that in order to appeal a denial of any benefits, including those administered by CNA, a claimant must "...request a review of a denied claim within 60 days after receipt of the denial." (SPD at 5) "The request must be made in writing and directed to: The Employee Benefits Committee of The TJX Companies, Inc." (Id.)(emphasis in origi-

---

8. When there is a dispute between the SPD and the Plan document (which may be the case here), the SPD controls. See *Mauser v. Raytheon Co. Pension Plan for Salaried Employees*, 31 F.Supp.2d 168, 173 (D.Mass. 1998), aff'd, 239 F.3d 51 (1st Cir.2001)("in the event of a conflict between the plan and the SPD,...the SPD will control."); *Wentworth v. Digital Equip.*, 933 F.Supp. 123, 127 (D.N.H.1995)("Where the SPD and plan document conflict, an employee is entitled to rely on the terms of the SPD."). Even if there is no dispute between the Plan and the SPD, I must rely on the SPD as well as the Plan in trying to determine who the administrator was or who it was supposed to be.

nal). This Committee "has the discretion to determine all matters relating to eligibility, coverage or benefits under the Plan and the Committee has the discretion to determine all matters relating to the interpretation and operation of the Plan. Any determination by the Committee is final and binding, in the absence of clear and convincing evidence that the Committee acted arbitrarily and capriciously." (R. 178)(emphasis in original) In addition, the SPD provides that the claimant will be notified in writing "... as to the decision of the Committee and the reasons for such a decision." (SPD at 5)(emphasis in original)

It appears that the plaintiff sent his appeal and all related documentation directly to CNA because all correspondence regarding the denial of his benefits and his appeal came directly from CNA. (See, e.g., R. 118, 121, 124). Indeed, Mr. Martinko informed the plaintiff that if he wished to appeal the denial of his benefits he should submit his formal request for reconsideration to "Mr. Martinko, CNA National Accounts in Maitland, Florida." (R. 114) Mr. Martinko further informed the plaintiff that if CNA upholds the denial of benefits, then the plaintiff's claim will be submitted to the [CNA] Appeals Committee for review. (R. 114) And, indeed, the plaintiff's appeal was decided by CNA. (See, e.g., R. 132–33)

The problem is that there is nothing in the SPD which even mentions, let alone gives, any authority whatsoever to a "CNA Appeals Committee." The bottom line is that the plaintiff here was not afforded the process that he was due under the SPD. That is, his appeal was not decided by the correct entity—it was decided by the Appeals Committee of CNA, rather than by the Employee Benefits Committee of The TJX Companies, Inc. as directed in the SPD. Although this distinction may seem to be minor, an employee's ability to rely on the terms of the SPD is vital. As one court has stated,

> ERISA requires that all employee benefit plans be established and maintained pursuant to a written instrument, ... and communicated to beneficiaries through a summary plan description ("SPD") .... The written instrument requirement serves two of the primary goals of ERISA: informing employees of the benefits to which they are entitled, and providing some degree of certainty in the administration of benefits .... These goals have formed the basis for courts' strict adherence to, and refusal to modify, the express terms of employee benefit plans .... Courts interpreting the provisions of ERISA-governed benefits plans must use common sense canons of contract interpretation.

*Wentworth*, 933 F.Supp. at 127. See also *Mauser*, 31 F.Supp.2d at 173 (quoting *Santana v. Deluxe Corp.*, 12 F.Supp.2d 162, 175 (D.Mass.1998))(quoting *Brumm v. Bert Bell NFL Retirement Plan*, 995 F.2d 1433, 1439 (8th Cir.1993)) ("an SPD 'must not mislead, misinform, or fail to inform participants and beneficiaries of the requirements of the full plan.' ")

Therefore, I find that the defendants did not abide by the terms of the SPD and that the plaintiff was denied the appeal procedures to which he was entitled under the SPD. Were I to find otherwise, I would be disregarding the explicit terms of the SPD. Thus, I must now determine what the proper remedy is in the situation where, as here, there is a procedural error in an ERISA denial of benefits case.

It has been held that "if significant procedural errors exist, the appropriate remedy is to remand the case to the plan administrator to remedy the defects." *Dabertin v. HCR Manor Care, Inc.*, 177 F.Supp.2d 829, 844–7 (N.D.Ill.2001)(citing

*Schleibaum v. Kmart Corp.*, 153 F.3d 496, 503 (7th Cir.1998)). Similarly, the District of Massachusetts has stated that:

> Remand to the named fiduciary is ordinarily the appropriate remedy when an out-of-court decision of a claim for benefits under an ERISA-regulated employee benefit plan is subject to judicial review and the reviewing court determines that the process by which the decision was made failed to measure up to the requirements of procedural fairness.

*Doe v. Travelers Ins. Co.*, 971 F.Supp. 623, 636 (D.Mass.1997)[9], aff'd in part, reversed in part on other grounds, 167 F.3d 53 (1st Cir.1999) (citing *Recupero v. New England Telephone and Telegraph Co.*, 118 F.3d 820, 830–31 (1st Cir.1997)).

Thus, even though it is unclear, as stated above, who the appropriate LTD administrator is, it is clear according to the SPD that the Employee Benefits Committee of The TJX Companies, Inc. is to rule on all appeals of denials of benefits. Therefore, I hereby remand the case to that Committee (that is, the Employee Benefits Committee of The TJX Companies, Inc.) for the purpose of allowing the plaintiff to appeal CNA's denial of his claims for long-term benefits to that Committee.[10] The plaintiff shall, within sixty days from the date of this Memorandum and Opinion, either (a) request the Employee Benefits Committee of The TJX Companies, Inc. to rule on the appeal previously filed, or (b) file a new appeal to the Employee Benefits Committee of The TJX Companies, Inc. from CNA's denial of his claim for long-term disability benefits. The Court shall retain jurisdiction pending the decision of the Employee Benefits Committee of The TJX Companies, Inc.[11]

---

9. I note that in Doe, the court (Keeton, J.) did not remand the case because it found that remand would be futile because the named fiduciary, due to a change in circumstances, would no longer be able to discharge its function of reconsidering the denial of benefits. *Doe*, 971 F.Supp. at 636. Instead, the Doe court held that a de novo standard of review applied due to the procedural errors and ultimately held that the plaintiff was entitled to recover unpaid benefits, including pre- and post-judgment interest. *Id.* The First Circuit affirmed the District Court's award of benefits and interest. *Doe*, 167 F.3d at 60.

10. Were CNA to decide the appeal of its denial of benefits to the plaintiff, there would be the presumption of a conflict of interest because with regard to LTD, CNA would be both the funding source of the Plan and the plan administrator. (SPD at 3) "An insurer with a 'dual role as the administrator and funding source for the [p]lan' has an inherent conflict of interest." *Nord v. The Black & Decker Disability Plan*, 296 F.3d 823, 828 (9th Cir.2002)(*quoting Lang v. Long–Term Disability Plan of Sponsor Applied Remote Tech., Inc.*, 125 F.3d 794, 797 (9th Cir.1997)); see also *Laser v. Provident Life & Accident Ins. Co.*, 211 F.Supp.2d 645, 649 (D.Md.2002)(*quoting Bedrick v. Travelers Ins. Co.*, 93 F.3d 149, 151 (4th Cir.1996))("defendant's dual role in both administering and insuring [a] plan creates at least the potential for a conflict of interest because defendant 'bears the financial consequences-and reaps the financial rewards-of its own coverage decisions.' "); *Edgerton v. CNA Ins. Co.*, 215 F.Supp.2d 541, 548 (E.D.Pa.2002)(stating that there is "an inherent conflict of interest" when "an insurance company both determines eligibility for benefits and pays for those benefits out of its own funds."). Here, any potential conflict of interest is obviated because the TJX Committee, an entity which is not funding the LTD portion of the Plan, will be the ultimate decision maker with regards to the denial of LTD benefits to the plaintiff.

11. The preferred course of action is for the Court to retain jurisdiction over the matter but not to enter a final judgment. See *Maida v. Life Ins. Co. of North America*, 949 F.Supp. 1087, 1094 (S.D.N.Y.1997)(concluding that when a court is remanding a case to the plan administrator the court should "retain jurisdiction over [the] case pending the outcome of the remand while at the same time ensuring that the remand is dealt with expeditiously" rather than view the remand as "a final disposition of the matter...and enter judgment.")

If the Committee does not rule on the plaintiff's appeal within sixty (60) days of the plaintiff either notifying the Committee that it should decide the previously filed appeal or filing a new appeal from the denial of long-term benefits, the Court shall, if plaintiff so requests, decide the plaintiff's claim on a de novo basis. If the Committee does rule, the plaintiff may file an amended complaint challenging the Committee's decision if he is dissatisfied with it.

### V. Conclusion and Order

For the aforementioned reasons, it is ordered that the Motion for Summary Judgment of Defendants, The TJX Companies, Inc. and Continental Casualty Company (# 16) be, and the same hereby, is DENIED and the Plaintiff's Motion for Summary Judgment (# 22) be, and the same hereby, is DENIED.