Gary B. MAUSER, Plaintiff,

v.

**RAYTHEON COMPANY PENSION PLAN FOR SALARIED EMPLOYEES** and Raytheon Company, Defendants.

No. Civ.A. 97–10215 RCL.

United States District Court,
D. Massachusetts.

Sept. 9, 1998.

Kevin G. Powers, Boston, MA, Neil M. Frank, Farmingdale, NY, Christopher T. Borruso, Ralph A. Somma, Frank & Breslow, L.L.P., Farmingdale, NY, for Gary B. Mauser, plaintiff.

Michael P. DeFanti, Hinckley, Allen, Snyder & Comen, Providence, RI, Willard Krasnow, Hinckley, Allen & Snyder, Boston, MA, for Raytheon Company, Pension Plan for Salaried Employees, defendants.

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

YOUNG, District Judge.

#### Introduction

The plaintiff, Gary Mauser, has sued his employer, Raytheon Company, and the Raytheon Company's employee pension plan ("the Plan") under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Mauser seeks to have his pension, as computed on his salary for a pre–1981 stint of employment, reckoned according to the formula for the calculation of pension benefits that became effective in January, 1981 (the "Amended Formula"). Specifically, he seeks a declaratory judgment that he is entitled to a calculation of his pension under the Amended Formula, or, alternatively, judgment in his favor due to his claimed reliance upon what he says were representations of Raytheon that led him reasonably to believe that his pension would be calculated in accordance with the Amended Formula. The defendants have

moved for summary judgment on all counts of Mauser's complaint.

### Facts

The following facts appear from the papers filed by the parties in connection with the motion for summary judgment. Unless stated as allegations, opinions, or views of one side or the other, the matters stated here are not in dispute.

Mauser began working at Raytheon in 1966. He voluntarily left the company on February 29, 1980 and commenced work at Raytheon again on May 11, 1988. He thus became what is known as a "break-in-service" employee. Shortly after Mauser left Raytheon in 1980, he received a statement of benefits, informing him of the total pension amount to which he was entitled for his first period of service, that is the period of service between 1966 and 1980.[1] Raytheon amended its pension plan effective January 1, 1981 (the "Amended Plan"). The Amended Plan incorporated the Amended Formula, a calculation of pension benefits more favorable to employees than the formula that was in effect when Mauser terminated his first period of employment. Mauser alleges that, in or about 1987, he heard through the grapevine of former Raytheon employees that Raytheon had adopted the Amended Plan with its more favorable Amended Formula. For that reason, among others, Mauser says, he returned to Raytheon in May 1988.

About 1990, Mauser received a "Personal Statement of Benefits" that did not reflect any benefits attributable to his first period of service, 1966 to 1980. Rather, the statement reflected pension benefits calculated only on the basis of that period of his employment commencing in 1988. He requested, but did not receive, a "corrected statement," which, in his view, would include some credit, under the Amended Formula, for his pre–1981 employment. Mauser testified during his deposition that he inquired at least three more times during the next several years about receiving credit for his earlier employment,

but was told each time that Raytheon would have to investigate the problem and issue a new statement.

Mauser claims he is entitled to pension benefits that take into account the application of the Amended Formula to his pre–1981 salary. The defendants, of course, disagree and have rejected Mauser's claim that the Amended Formula be applied to his pre–1981 earnings. In this case Mauser seeks determinations that would, in effect, reverse the decision of the defendants to deny Mauser's claims.

### Summary Judgment Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See FED.R.CIV.P. 56(c); *DeNovellis v. Shalala*, 124 F.3d 298, 305 (1st Cir.1997).

### Discussion

Count One of Mauser's complaint seeks a declaratory judgment clarifying the future benefits to which he is entitled, as well as an injunction ordering the defendants to calculate the pension benefits for his entire employment with Raytheon under the Amended Formula. See *Massachusetts Mut. Life Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (claimant can file action to obtain a declaratory judgment that she is entitled to ERISA benefits under the provisions of the plan contract, and to enjoin the plan administrator from improperly refusing to pay benefits in the future).

■■■ Typically, where a benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the administrator's decision not to award benefits will be reversed only if it is "arbitrary and capricious." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103

---

1. The letter, dated March 28, 1980, stated that Mauser was entitled to a vested benefit of $453.17 per month if he did not withdraw his contributions, or $243.09 per month if he did withdraw them, each payable at 65 as a single

life annuity. Mauser withdrew his contributions by application dated August 30, 1982, and received $12,085.72, representing his contributions plus interest.

L.Ed.2d 80 (1989). Here, the Amended Plan provides that, "The Administrator shall make all determinations as to the right of any person to a benefit under the plan ..."[2] Nevertheless, Mauser argues that a conflict of interest requires the court to subject the decision of the Plan administrator to heightened scrutiny.[3]

Mauser alleges that the Plan will save money by denying his claim, and that the decision of the plan administrator therefore should not be treated with the substantial deference accorded under the arbitrary and capricious standard. The Court of Appeals for the First Circuit has recognized the potential for conflict where the plan administrator also is the plan insurer. *See Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181 (1st Cir.1998). Here, Mauser alleges that, because Raytheon is both the employer and the plan administrator, an equivalent conflict of interest exists.

That does not appear, from the record here, to be the case. Raytheon *qua* employer does not stand to gain if its pension plan denies claims, because benefits are paid from the Plan's fund, not from Raytheon's assets. Therefore, the court will review the decision of the plan to deny Mauser's claim under the arbitrary and capricious standard.

■ The relevant provisions of the Amended Plan, succinctly stated, are as follows. The Amended Plan establishes a formula for calculating pensions for periods of employment subsequent to December 31, 1980. That formula bases pension benefits on an employee's final average salary, whereas the previous formula—in existence at the time Mauser ended his first period of employment—based pension benefits on the employee's career average salary. In addition, the Amended Plan extends coverage to "[any] Member, who was no longer in the Plan as of December 31, 1980, because he had withdrawn contributions," if that person falls into one of six categories. Mauser does not claim that he is a member of any of these categories.

The Amended Plan states that it applies to "periods of Membership subsequent to December 31, 1980." *Plan* at 10. Mauser correctly argues that the Amended Plan does not expressly address whether employees with periods of membership subsequent to the relevant date, as well as periods prior to that date, are entitled to have the Amended Formula applied to their entire period of service.

While the Amended Plan does create an entitlement for Mauser's service after December 31, 1980, there is no reason to infer from anything in the Plan itself that all of Mauser's years of service must be calculated under the same formula. At best, the Amended Plan's silence on the issue suggests that the treatment of pre–1981 break-in-service employees is left to the discretion of the plan administrator. To determine that the post–1981 formula was intended to apply only to periods after the effective date of the Amended Plan is thus a reasonable interpretation.[4] Therefore, there is nothing arbitrary or capricious about declining to extend the Amended Formula to an employee's pre–1981 service simply because the employee also has post–1981 service.

Mauser also argues that the plan administrator has interpreted the Amended Plan in an inconsistent fashion. He points to a settlement paid to another break-in-service employee, Lawrence Lavalle, intended to compensate that employee as if the Amended Formula applied to all periods of employment of break-in-service employees. It appears from the record, however, that the settlement with Lavalle was based on his allegation that, during re-employment negotiations, four individuals at Raytheon promised

---

**2.** The Administrator of the Amended Plan is the Employee Benefits Administration Committee appointed by Raytheon's vice president for human resources.

**3.** That standard means that the decision of the plan administrator will be upheld if it is within the plan administrator's authority, reasoned, and "supported by substantial evidence in the rec-

ord." *Associated Fisheries of Maine, Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir.1997).

**4.** On the principle of "inclusio unius, est exclusio alterius," the Amended Formula's specific statement of application to periods of service after December 31, 1980 would preclude its application to periods before that date.

that the Amended Formula would apply retroactively. Lavalle thus claimed that application of the Amended Formula to his pre–1981 earnings was a specific term of his employment agreement with Raytheon. The defendants accepted that claim.

Mauser makes no claim similar to that made by Lavalle; that is, he makes no claim that application of the Amended Formula to his pre–1981 earnings was a term of his re-employment with Raytheon. Indeed, Mauser acknowledged at his deposition that he never inquired as to the applicability of the Amended Formula to his pre–1981 earnings when he returned to Raytheon. Mauser therefore has not produced evidence of inconsistent interpretation of the rule. Rather, he has shown only that the plan administrator applied the formula, not unreasonably, in a circumstance unlike his own.[5] For all the reasons stated above, the defendants' motion for summary judgment as to Count One is ALLOWED.

■ Count Two of Mauser's complaint is directed at an alleged conflict between the language of the Summary Plan Description ("SPD") provided by the defendants and the Amended Plan document itself. Even if the plan administrator interpreted the Amended Plan document in a reasonable fashion, Mauser contends, the defendants violated ERISA § 502, 29 U.S.C. § 1022, by providing incomplete information in the SPD.[6] Because he relied on the misleading language of the SPD, Mauser claims, the defendants are estopped from applying a different interpretation of the Amended Plan to him. *See Govoni v. Bricklayers, Local 5 Pension Fund*, 732 F.2d 250, 252 (1st Cir.1984) (holding that employee is entitled to relief if he can establish that SPD failed to give notice of difference in treatment of break-in-service employees and employee can demonstrate reasonable reliance); *see also Santiago Rolon v. Chase Manhattan Bank*, 912 F.Supp. 19 (D.P.R.1996) (finding filing requirement waived where SPD failed to give notice of requirement).

Mauser points to several SPD clauses allegedly justifying the belief that he would receive the higher salary base retroactively. He focuses particularly on the section of the SPD headed: "If you leave Raytheon and later return." *SPD* at 14. That section explains:

[I]f you leave the company and are away longer than 12 months, you won't receive credit for the time you were away. *Whether the service you had before you left will be counted depends on whether or not you were vested before you left, and on the length of time you were gone.*

*It will be counted when you have completed a year of service after you return* if any of the following applies:

1. You were vested when you left [applicable to Mauser]

5. Mauser proffered evidence that the plan administrator's decision to credit Lavalle's allegations were based on a personal relationship with a Raytheon executive who intervened on that employee's behalf. That evidence consists of testimony of Raytheon employee Chad Miller and documents which show that C. Dale Regis, then vice president of Raytheon Electronic Systems, wrote a letter to an employee in the office of Raytheon's manager for pension administration. The critical part of that letter reads as follows: "I'm requesting that you grant full pension rights to Mr. Lavalle. I'm requesting that on the basis that I've known Larry for over 20 years; he's a solid citizen, and I believe him if he says he was 'promised by 4 people.'" The letter thus vouches for the credibility of Lavalle's claim that his employment contract called for the application of the Amended Formula to his pre–1981 earnings to calculate his pension. Reis' intervention then was limited to the giving of weight to Lavalle's employment contract claim.

6. Section 1022 provides:

(a) A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title. The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.

(b) The summary plan description shall contain the following information: ... [t]he plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits.... 29 U.S.C. § 1022(a) & (b).

2. Your time away is less than the service you had before you left [applicable to Mauser]

3. [inapplicable to Mauser] (Emphasis added).

Because this passage does not state that, if earlier years are counted, they will be calculated at a different rate, Mauser contends that he was justified in believing that his prior years of service would be calculated under the Amended Formula.[7]

There are, in addition, several other passages in the SPD that could be thought to give rise to the belief that the Amended Formula applied to Mauser's total years of service with Raytheon irrespective of the break. *See SPD* at 2 ("Your retirement benefit is figured according to *a formula* which takes into account your pay near retirement, your years of plan membership, and your estimated primary Social Security benefit.") (Emphasis added); *id.* at 5 ("How Pensions Are Figured") (repeating same formula without mentioning lower rate for pre–1981 contributions if employee had break in service).[8] Accordingly, Mauser argues that the SPD violates § 1022 by not clearly identifying "circumstances which may result in disqualification, ineligibility, or denial on loss of benefits" . . . 29 U.S.C. § 1022(b).[9]

The defendants argue that the plan summary is not required to anticipate every possible idiosyncratic contingency that might affect a particular participant's or beneficiary's status. *See Lorenzen v. Employees Retirement Plan of the Sperry & Hutchinson Co.,* 896 F.2d 228, 236 (7th Cir.1990). The defendants assert that only a small number of Raytheon employees (somewhere between 100 and 243) were in Mauser's precise situation, and given that small number the defen-

dants were justified in not addressing the applicability *vel non* of the Amended Formula to such employees. The difficulty with the defendants' argument, however, is that an SPD "must not mislead, misinform, or fail to inform participants and beneficiaries of the requirements of the full plan." *Santana v. Deluxe Corp.* 12 F.Supp.2d, 162, 175 (D.Mass.1998) (*quoting Brumm v. Bert Bell NFL Retirement Plan,* 995 F.2d 1433, 1439 (8th Cir.1993)). Given that the SPD has a specific section on breaks-in-service, it could well be thought by a trier of fact that the failure to mention an important difference in the treatment of employees by the Amended Plan depending on when the employee's break-in-service occurred constituted misinformation or was misleading. *Cf. Govoni,* 732 F.2d at 252. Although the defendants were not required to address remote possibilities in the SPD, a trier of fact could conclude that they were required to provide complete information where they chose to provide *some* information on breaks-in-service.

■ The defendants' reliance on a disclaimer in the SPD presents a closer question. The SPD states that the SPD is not a full restatement of the Amended Plan and that, in the event of any inconsistency between the Amended Plan document and the SPD, the former will control.

■ Generally, in the event of a conflict between the plan and the SPD, and in the absence of a disclaimer, the SPD will control. *See United Steelworkers of America, AFL— CIO v. Newman–Crosby Steel,* 822 F.Supp. 862, 866 (D.R.I.1993); *see also Chiles v. Ceridian Corp.,* 95 F.3d 1505 (10th Cir.1996) ("Because the SPD is such an important vehicle in ERISA's attempt to fairly regulate

---

7. *See also SPD* at 3: "For purposes of eligibility, service includes anytime you work for the company and are paid or entitled to payment."

8. The parties have failed to address an apparently important issue. In several places, the SPD states that it will not cover any pre–1981 service if contributions were withdrawn and not repaid. There is no information in the record whether Mauser repaid the contributions withdrawn in August of 1982. If Mauser did not repay the contributions, those statements in the SPD should have put him on notice that those years were excluded. If Mauser did repay the contri-

butions, however, then Mauser might well have been justified in the belief that repayment of the contributions entitled him to the benefits calculated in accordance with the Amended Formula.

9. The defendants argue that Mauser is not being denied benefits, or losing benefits, since he will receive benefits for his entire period of service. The court perceives no distinction under § 1022 between a denial of a portion of benefits (as Mauser claims occurred in his case) and a denial or loss of all benefits.

employment benefits, courts have held that the terms of the master plan cannot control an SPD's provision that is ambiguous or in conflict with the master plan document"). No case in the First Circuit has addressed the effect of a disclaimer on the foregoing principle. Several other circuits, however, have permitted pension *plans* to disclaim omissions or ambiguities in an SPD by reference to the plan document. *See, e.g., Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1330–31 (9th Cir.1996); *Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1142 (3d Cir.1993); *McGee v. Equicor–Equitable HCA Corp.*, 953 F.2d 1192, 1201 (10th Cir.1992) (disclaimer made plan controlling).

At least three circuits, however, have refused to allow such disclaimers, holding that, in the event of conflict, the SPD is the controlling document. *See, e.g., Aiken v. Policy Mgmt. Sys. Corp.*, 13 F.3d 138, 140–42 (4th Cir.1993) (reversing district court's holding that disclaimer could make plan control, despite general rule that SPD controls in event of conflict); *Hansen v. Continental Ins. Co.*, 940 F.2d 971 (5th Cir.1991) (since SPD controls, disclaimer could not make Plan superior to SPD). In *McKnight v. Southern Life & Health Ins. Co.*, 758 F.2d 1566, 1570 (11th Cir.1985), the Court of Appeals for the Eleventh Circuit commented that: "It is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complex document, and then proclaim that any inconsistencies will be governed by the plan. Unfairness will flow to the employee. . . ." This court is persuaded by the reasoning of the Eleventh Circuit; and the court adds the observation that the more thorough the SPD appears to be, the less likely it will place the employee on notice that he must consult to the plan document itself. After all, what would be the sense of an SPD if the employee were required to scour the plan document to make sure there were no conflicts between the SPD and the plan document? The court thus accepts the approach of the Fourth, Fifth, and Eleventh circuits as the one that best serves the policy embodied by the disclosure requirements of § 1022.

Finally, the defendants argue, as to Count Two, that Mauser has failed to demonstrate "significant detrimental reliance or possible prejudice" stemming from the alleged deficiencies in the plan description found in the SPD. *See Bachelder v. Communications Satellite Corp.*, 837 F.2d 519, 521 (1st Cir.1988); *Govoni*, 732 F.2d at 252; *Santiago Rolon*, 912 F.Supp. at 22. The court disagrees. Mauser claims that he would have reduced his expenditures in recent years had he been aware he would receive a lower pension, including opting not to purchase a vacation home and to spend less on his daughter's wedding. Mauser therefore appears to have raised a triable issue of fact as to the reasonableness and significance of his reliance on the SPD. The defendants' motion for summary judgment on Count Two therefore is DENIED.

Count Three of the complaint alleges a claim of estoppel against the defendants based on the aforementioned ambiguous language in the SPD, the omission of specific reference to his pre–1981 service from his 1990 statement of benefits, and the delay by Raytheon employees in responding to questions about how the Amended Plan would credit his pre–1981 employment. The elements of an estoppel are (1) that the party to be charged must make a definite misrepresentation of fact to another person, having reason to believe that the other will rely upon the misrepresentation, and (2) the other party must rely reasonably on the misrepresentation to his detriment. *Law v. Ernst & Young*, 956 F.2d 364, 368 (1st Cir.1992) (citing *Phelps v. Federal Emergency Management Agency*, 785 F.2d 13 (1st Cir.1986)).

Mauser has failed to establish the existence of any "definite misrepresentation" by the defendants. At worst, the SPD fails to mention that break-in-service employees may not have their pre–1981 service calculated in accordance with the Amended Formula. *Cf. Ernst & Young, supra* (employer sent a letter with incorrect statement of benefits). That omission does not constitute a definite misrepresentation. Similarly, the failure to refer to Mauser's pre–1981 service in his 1990 statement of benefits is not a definite misrepresentation. In fact, it was that omis-

sion that put Mauser on notice that something was amiss. Finally, a failure to answer questions is not an affirmative misrepresentation. Indeed, a failure to answer a question is likely to put a person of ordinary prudence on notice of the need to inquire further, rather than create the basis for any kind of justifiable reliance. The defendants' motion for summary judgment therefore is ALLOWED as to Count Three.

 Mauser's final claim against the defendants is that the defendants breached their fiduciary duties to Mauser. *See Varity Corp. v. Howe,* 516 U.S. 489, 490, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (holding that it is a violation of fiduciary duty to "participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense"). The *Varity* Court, however, reserved the issue of whether fiduciaries have an affirmative duty to disclose information. *Id.* at 506, 116 S.Ct. 1065.

In *Boucher v. Williams,* 13 F.Supp.2d, 84 (D.Me.1998), a court in the district of Maine stated: "The Court is unable to find a case imposing fiduciary liability on a welfare benefits plan administrator solely because it failed to comply with ERISA's notice requirements where there was not some evidence of intentional concealment or affirmative misstatement." *Id.* at 99 (citing *Sweeney v. Kroger Co.,* 773 F.Supp. 1266, 1269 (E.D.Mo.1991) ("The fiduciary duty imposed by ERISA generally relates to the management of plan assets while a plan administrator's duty to disclose information to plan participants is another matter, dealt with separately by ERISA.")) (internal quotation omitted). The search for such authority by this court has produced similar results. It appears then that some affirmative concealment is required before a plan administrator's failure to comply with ERISA notice requirements can be held to have breached fiduciary obligations.

Mauser has not alleged any sinister motive in the defendants' failure fully to explain in the SPD the application *vel non* of the Amended Formula to his pre–1981 earnings; at most, the plaintiff points to evidence that the omission was a conscious decision. But the evidence is undisputed that this decision, through conscious, was thought to be justified in light of the relatively small number of employees who shared Mauser's circumstances. The decision might have been unwise, but there is no basis for a trier of fact to find that it was a deliberate effort to mislead participants in the pension program. *See Kreutzer v. A.O. Smith Corp.,* 951 F.2d 739, 743 (7th Cir.1991) ("Most courts that have considered the issue have held that the employer must have acted in bad faith, actively concealed the benefit plan, or otherwise prejudiced their employees by inducing reliance on a faulty plan summary before recovery for procedural violations is warranted"); *Ackerman v. Warnaco, Inc.,* 55 F.3d 117, 124 (3d Cir.1995) ("We have repeatedly held that under ordinary circumstances defects in fulfilling the reporting and disclosure requirements of ERISA do not give rise to a substantive remedy other than that provided for in section 502(a)(1)(A) of that Act"). *See also Varity,* 516 U.S. at 514, 116 S.Ct. 1065 (stating that, rather than "complicate ordinary benefit claims by dressing them up in 'fiduciary duty' clothing," court "should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief. . . ."). For the foregoing reasons, the defendants' motion for summary judgment is ALLOWED as to Count Four of the complaint.

### Conclusion

The defendants' motion for summary judgment is ALLOWED as to Counts One, Three, and Four. With respect to Count Two, alleging a violation of 29 U.S.C. § 1022, the motion of the defendants for summary judgment is DENIED.

SO ORDERED.