# United States Court of Appeals
## For the First Circuit

No. 99-1895
    99-1896

GARY B. MAUSER,

Plaintiff, Appellant/Cross-Appellee,

v.

RAYTHEON COMPANY PENSION PLAN FOR SALARIED EMPLOYEES;
RAYTHEON COMPANY,

Defendants, Appellees/Cross-Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William J. Young, U.S. District Judge]
[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Torruella, Chief Judge,
Wallace,* Senior Circuit Judge,
and Boudin, Circuit Judge.

Ralph Somma, with whom Frank & Brelow, P.C. was on brief,
for appellant.
Michael P. DeFanti, with whom Willard Krasnow, and
Hinckley, Allen and Snyder LLP were on brief, for appellees.

February 2, 2001

**WALLACE,** <u>Circuit Judge</u>.  Mauser appeals from the district court's summary judgment for Raytheon Company Pension Plan for Salaried Employees and Raytheon Company (together, Raytheon) as to his claims that (1) Raytheon arbitrarily and capriciously denied him pension benefits; (2) Raytheon should be estopped from denying him benefits; and (3) Raytheon violated its fiduciary obligations under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 <u>et seq</u>.  Mauser also contests the remedy and attorneys' fees awarded by the district court after trial on his fourth claim, which alleged that he detrimentally relied on a misleading summary plan description.  Finally, Mauser asserts that the district court abused its discretion when, after trial, it did not allow Mauser to amend his complaint in order to bring a claim for statutory penalties under ERISA.  In its cross-appeal, Raytheon argues that the district court erred in denying Raytheon's motion for summary judgment as to Mauser's claim of reliance on an inadequate summary plan description and in holding against Raytheon on that claim at trial.  The district court had jurisdiction under 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We affirm in part and reverse in part.

I

Mauser's first stint of employment for Raytheon began in September 1966 and ended on February 29, 1980. During this period, Mauser became completely vested in Raytheon's contributory defined benefit plan, which, at that time, calculated benefits using a participant's career average salary. After Mauser left Raytheon in 1980, he received a letter explaining his pension benefit: at age 65, he would receive $453.17 per month or, if he withdrew his contributions, $243.09 per month. Mauser withdrew his contributions by an application dated August 30, 1982.

Effective January 1, 1981, Raytheon made its plan non-contributory and changed its benefits formula to one based on a participant's final average salary, thereby significantly increasing retirement benefits for eligible employees. The plan was renamed "Raytheon Company Pension Plan for Salaried Employees" (Plan). Under the terms of the Plan, the new formula did not apply to Mauser because he was not an active employee on December 31, 1980, and did not fall within one of the exceptions.

During 1987, Mauser learned from current and former Raytheon employees of the favorable change to Raytheon's pension benefit formula. With this information in mind, Mauser states that he turned down a job at Westinghouse Company during February 1988, and in April 1988 he applied to Raytheon. Upon his re-hire at Raytheon, he received a copy of the current summary plan description

(Plan Summary) which contained the following section:

**If you leave Raytheon and later return**

. . . .

[I]f you leave the company and are away longer than 12 months, you won't receive credit for the time you were away.  Whether the service you had before you left will be counted depends on whether or not you were vested when you left, and on the length of time you were gone.

It will be counted when you have completed a year of service after you return if any of the following applies:

1.   You were vested when you left

2.   Your time away is less than the service you had before you left

3.   You left after 1/1/85, and your time away is less than five years.

The district court found that Mauser read this statement and believed that his pre-1981 years of service would be taken into account when his pension was calculated under the new, final average salary formula.

Mauser asserts that in reliance on his reading of the Plan Summary, he "rejected a more lucrative offer of employment with Westinghouse Company, made improvements on his home, provided his daughter a lavish wedding, did not make alternate or additional retirement income plans, agreed his wife did not need to obtain employment with a promise of future pension benefits, and remained in the employ of Raytheon."

In 1990, Mauser received a personal statement of benefits from Raytheon; he realized that it did not include any credit for his pre-1981 years of service. Mauser orally requested a corrected statement, which he did not receive. However, Mauser did not make clear to Raytheon his belief that his prior years of service would be included in calculating his benefits. The benefits statements from 1991 through 1994 all failed to include credit for pre-1981 service, and Mauser continued, unsuccessfully, to make verbal requests for a corrected statement. Beginning in November of 1994, Mauser made a more intense, written effort to ascertain the scope of his benefits. Early in 1995 Raytheon informed Mauser that his pre-1981 years of service would not be used in calculating his pension. Mauser then hired an attorney and has consistently maintained that he is entitled to a calculation of benefits under the new formula that takes into account both his first and second periods of employment with Raytheon.

Mauser brought four claims against Raytheon. First, he alleged that Raytheon's administration of benefits was arbitrary and capricious because Raytheon had granted credit to one employee for his pre-1981 years of service. (This claim also included allegations, not raised on appeal, that Raytheon had arbitrarily and capriciously misinterpreted the Plan.) Next, Mauser alleged that Raytheon should be estopped from denying him credit for his pre-1981

years of service because Raytheon had purposefully misrepresented its position regarding break-in-service employees (estoppel claim). In addition, Mauser's complaint asserted that Raytheon's actions amounted to a breach of its fiduciary duty under ERISA (fiduciary duty claim). These three claims — capricious denial, estoppel, and fiduciary duty — were resolved in Raytheon's favor on its motion for summary judgment. See Mauser v. Raytheon Co. Pension Plan for Salaried Employees, 31 F.Supp.2d 168 (D. Mass. 1998).

A bench trial was held on Mauser's final claim that Raytheon's Plan Summary violated ERISA's disclosure requirements. The district court concluded that the Plan Summary was inadequate and that there was "some" "thin" reliance. It held that Mauser would be allowed to redeposit his withdrawn contributions; however, the new formula would not be applied to include the pre-1981 years of service. Mauser requested attorneys' fees in the amount of $156,201, but the court, after taking into account various factors, awarded only $35,000 in fees. After trial, Mauser asked the district court to allow him to amend his complaint to include a claim for statutory penalties against Raytheon for refusing to provide benefit information in violation of 29 U.S.C. §1132(c). The district court denied this request to amend.

II

At the heart of this appeal is Mauser's claim that

Raytheon is bound by the Plan Summary to credit his pre-1981 years of service under its favorable, final average salary formula.  One of ERISA's civil enforcement provisions provides that a participant may bring an action "(A) to enjoin any act or practice which violates any provision of this subchapter . . . or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).  Mauser asserts that he is entitled to "other appropriate equitable relief" because the Plan Summary violated ERISA's disclosure provision, which provides:

(a) A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries . . . . The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. . . .

(b) The summary plan description shall contain the following information: . . . the plan's requirements respecting eligibility for participation and benefits; . . . circumstances which may result in disqualification, ineligibility, or denial or loss of benefits . . . .

29 U.S.C. § 1022; see Govoni v. Bricklayers, Masons and Plasterers Int'l Union of Am., Local No. 5 Pension Fund, 732 F.2d 250, 252 (1st Cir. 1984). We have recognized that a Plan Summary that violates this provision will be binding on a plan administrator. However, we have also held, drawing on common law principles of estoppel, that such relief is only appropriate if the participant demonstrates significant or reasonable reliance on the Plan Summary. Bachelder v. Communications Satellite Corp., 837 F.2d 519, 523 (1st Cir. 1988). It is not enough to show a "mere expectation" that certain benefits will materialize; action must have been taken in reliance on reasonable expectations formed after reading the Plan Summary. See id. at 523 n. 6.

Raytheon asserts both that the Plan Summary did not violate ERISA's disclosure provision and that Mauser has failed to show significant or reasonable reliance on the Plan Summary.

A.

In its cross-appeal, Raytheon argues that the district court erred in denying its motion for summary judgment as to Mauser's claim of reliance on an alleged inadequate Plan Summary. Raytheon contends that Mauser failed to show any acts taken in reasonable reliance on the Plan Summary because he stipulated that he had "no memory one way or the other whether he read the [Plan Summary] at the time of being rehired" by Raytheon. This stipulation was entered

into the day before the district court denied summary judgment. While we agree that Mauser could not demonstrate the requisite level of reliance if he did not read the Plan Summary at the time of his re-hire, we are bound by the principle that "[o]rdinarily, the denial of summary judgment is not appealable. Acevedo-Garcia v. Vera-Monroig, 204 F.3d 1, 7 (1st Cir. 2000). "An order denying summary judgment typically does not merge into the final judgment and therefore is not an independently appealable event if the case thereafter proceeds to trial." Iacobucci v. Boulter, 193 F.3d 14, 22 (1st Cir. 1999); see also Lama v. Borras, 16 F.3d 473, 476 n. 5 (1st Cir. 1994). Thus, to be preserved for review, a denial of summary judgment must be perfected by making a motion for judgment as a matter of law at the close of the evidence. Eastern Mountain Platform Tennis, Inc. v. Sherwin-Williams Co., Inc., 40 F.3d 492, 497 (1st Cir. 1994). Here, because no such motion was made, we may not address the merits of this claim.

B.

Raytheon also argues that the district court erred in entering judgment in favor of Mauser. The district court's factual findings are reviewed for clear error. Roman v. Maietta Const., Inc., 147 F.3d 71, 74 (1st Cir. 1998). We review de novo the district court's determination as to the governing legal rules and its application of those rules to the facts. Id.; Reich v. John

-9-

Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997).

The district court found that Mauser demonstrated
sufficient reliance to merit a remedy, even though it characterized
the reliance as being "thin."  In reviewing the record of the bench
trial, we observe that the court only made two findings in support of
its ultimate conclusion.  First, the district court found that Mauser
did read the Plan Summary upon his re-hire and believed that his pre-
1981 years of service would be counted under the new formula.
Second, the court found that Mauser heard "through the grapevine from
present and former Raytheon employees" about Raytheon's improved
pension benefit plan and that "one of the reasons he did not go with
Westinghouse, who had offered him a slightly better plan, was that he
hoped . . . and expected that his pension plan from Raytheon would be
sweeter than that he would get from Westinghouse for whom he had no
prior period of employment."

We need not address whether the district court's findings
of fact were clearly erroneous in light of Mauser's stipulation.
Rather, we hold that the district court incorrectly applied the law
to the facts found in reaching its conclusion.  There is no evidence
that Mauser significantly or reasonably relied on the Plan Summary.
First, even if Mauser did actually read the Plan Summary at the time
of his re-hire, the mere forming of an expectation as to benefits is
not enough.  There must be some measurable prejudice to Mauser.

-10-

Bachelder, 837 F.2d at 523 & n.6.  Likewise, Mauser's decision not to take the more lucrative job with Westinghouse cannot constitute reliance on the Plan Summary because the trial court found that he rejected this job opportunity on the basis of rumors he had heard from former and current Raytheon employees.  In fact, the district record reveals that Mauser rejected the job offer at Westinghouse before he had even applied to Raytheon.

As to the other acts — improvements to his home, lavish wedding for his daughter, failure to make alternate retirement plans, his wife's employment decisions—offered by Mauser to show reliance, the district court stated, "While I believe Mr. Mauser's testimony about his financial affairs, the paying for his child's wedding, I do not find that they constitute any detrimental reliance here. . . There appears to have been no detailed financial planning done until he had the advice of counsel."  The court's finding that Mauser did not act until after he was advised by an attorney of his legal options is not clearly erroneous on the record before us.  We also point out that as early as 1990, Mauser became aware, after receiving his annual statement of benefits, that he might not be receiving credit under the new formula for his pre-1981 years of service.  Any reliance after that point would have been unreasonable.

Therefore, we reverse the trial court's decision to provide a remedy to Mauser based on his assertions that he relied on

-11-

an inadequate Plan Summary. Because we hold that the record at trial fails to demonstrate significant or reasonable reliance, we need not address Raytheon's arguments regarding the adequacy of the Plan Summary.  As Mauser did not prevail, we vacate the award of attorneys' fees.

### III

Mauser appeals from the district court's summary judgment in favor of Raytheon as to his capricious denial, estoppel, and fiduciary duty claims.  We review a summary judgment de novo, "construing the record in the light most favorable to the nonmovant and resolving all reasonable inferences in that party's favor." Landrau-Romero v. Banco Popular De Puerto Rico, 212 F.3d 607, 611 (1st Cir. 2000).  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

### A.

Mauser alleges that Raytheon administered its Plan arbitrarily and capriciously when it refused to credit his pre-1981 years of service under the final average salary formula.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 114-15 (1989) (holding that where the plan administrator has discretionary

-12-

authority to determine eligibility for benefits, the administrator's decision not to award benefits will be reversed only if it is "arbitrary and capricious").  In support of his claim, Mauser points to the fact that Raytheon credited the pre-1981 years of service of Lawrence Lavallee, an employee who, like Mauser, left Raytheon before it implemented the new benefits formula and later returned after a lengthy break in service.   However, the undisputed evidence before the district court showed (1) that Lavallee was paid with respect to the pre-1981 years of service out of company assets and not Plan assets, (2) that Lavallee said he had expressly negotiated for this favorable treatment as a condition of his re-employment with Raytheon, and (3) that it was only after Lavallee made this claim known to Raytheon that he received credit for the pre-1981 years of service.

Mauser asserts that "a material question of fact exists whether Lavallee had such an agreement or was simply provided a generous interpretation of the plan based upon his long standing relationship with someone very high in the Raytheon hierarchy." However, resolving whether there was an actual agreement between Lavallee and Raytheon or whether Lavallee's assertions simply fell on friendly ears is not material to Mauser's claim that Raytheon administered its plan arbitrarily and capriciously.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In order to prevail, Mauser must demonstrate, at a minimum, that Raytheon treated him differently from similarly situated employees. Mauser and Lavallee are not similarly situated because Mauser, unlike Lavallee, has never asserted he had an express agreement with Raytheon regarding the pre-1981 years of service. In fact, Mauser acknowledged at his deposition that he never even inquired about the applicability of the new formula to his pre-1981 years of service when he first returned to Raytheon. It is irrelevant that, as Mauser asserts, there may not have been any actual agreement between Lavallee and Raytheon; the critical fact is that Lavallee asserted that such an agreement existed. Raytheon's response to that contention was not unreasonable. Therefore, we hold that district court properly granted Raytheon's motion of summary judgment on this issue. See Mauser, 31 F.Supp.2d at 171-72.

B.

Mauser also argues that Raytheon should be equitably estopped from denying him credit for pre-1981 years of service under the new formula. On appeal, Mauser has grounded this assertion entirely in the alleged inadequacies of the Plan Summary. An equitable estoppel claim contains two elements. First, Raytheon must have made "definite misrepresentations of fact" to Mauser with reason

to believe that Mauser would rely on it.  Law v. Ernst & Young, 956 F.2d 365, 368 (1st Cir. 1992) (citation and quotation omitted). Second, Mauser must "rely reasonably on the misrepresentation to his detriment." Id.  The district court found that Mauser had failed to establish that Raytheon made "definite misrepresentations" to Mauser. Mauser, 31 F.Supp.2d at 174.

It is, however, still an open question in this circuit whether an equitable estoppel claim is permitted under ERISA.  City of Hope Nat'l Med. Ctr. v. Healthplus, Inc., 156 F.3d 223, 230 n.9 (1st Cir. 1998); Ernst & Young, 956 F.2d at 370 n.9.  ERISA's expansive preemption provision provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  The Supreme Court has directed that federal courts may engage in interstitial rule-making when it is in the interests of justice.  See Bruch, 489 U.S. at 110; Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56 (1987); Kwatcher v. Mass. Serv. Employees Pension Fund, 879 F.2d 957, 966 (1st Cir. 1989).  However, we must exercise caution in creating new common law rules for pension plans; we should only act when there is, in fact, a gap in the structure of ERISA or in the existing federal common law relating to ERISA.  See Andersen v. Chrysler Corp., 99 F.3d 846, 856 (7th Cir. 1996).

Mauser's equitable estoppel claim is virtually

indistinguishable from his claim, discussed in part II of this opinion, that the Plan Summary violates ERISA's disclosure provisions. Because we have already established an avenue for relief for reliance on an inadequate Plan Summary, we hold there is not a more general equitable estoppel claim based solely on an inadequate Plan Summary. We leave for an appropriate case whether there may exist an equitable estoppel claim in cases where misrepresentations exist apart from the Plan Summary. Therefore, we affirm the district court's summary judgment, albeit for different reasons.

## C.

Like Mauser's equitable estoppel claim, his breach of fiduciary duty claim rests solely on the alleged inadequacies of the Plan Summary. The Supreme Court in Varity Corp. v. Howe, 516 U.S. 489 (1996), recognized that ERISA authorizes individual lawsuits for breach of fiduciary duty. Id. at 507-515. However, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate." Id. at 515 (quotation omitted). The Supreme Court has thus limited the applicability of an individual claim for breach of fiduciary duty to those participants who are unable to avail themselves of other

remedies.  See Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d

609, 615 (6th Cir. 1998).  As discussed in part II, we have an

established remedy for significant or reasonable reliance on a

statutorily inadequate Plan Summary.  We therefore do not recognize a

duplicative claim for breach of fiduciary duty based wholly on an

inadequate Plan Summary.  See Rhorer v. Raytheon Engineers &

Constructors, Inc., 181 F.3d 634, 639 (5th Cir. 1999).  Although our

remedy for violations of ERISA's disclosure provisions does not

depend exclusively on congressionally-crafted language (because we

draw on the common law of estoppel for guidance as to when relief is

appropriate), our decision is true to the general principle

reiterated in Varity and in Bruch that we should avoid creating

duplicative remedies for violations of ERISA's provisions.

IV

After trial, Mauser asked the district court to add a

claim for statutory penalties under 29 U.S.C. § 1132(c), which allows

courts to impose a $100-per-day fine for delay in providing requested

benefits information.  "The decision whether to allow amendment is

within the discretion of the trial judge and will be reversed only

where that discretion has been abused."  Keeler v. Hewitt, 697 F.2d

8, 14 (1st Cir. 1982).

The district court denied Mauser's motion, stating

Although Mauser might have had a very strong case for the

-17-

imposition of fines had he included the section 1132(c) claim in his complaint, he cannot fairly attempt to add it now.   First Circuit precedent permits a cause of action to arise pursuant to Fed. R. Civ. P. 15(b) "if, during the trial, a party acquiesces in the introduction of evidence which is relevant only to that issue."  Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995) (quoting DCPB, Inc. v. City of Lebanon, 957 F.2d 913, 917 (1st Cir. 1992)).  Without doubt, Mauser's introduction of Raytheon's failure to supply pension benefit calculations until 1995 was relevant to whether Mauser relied on the Summary's description of determining benefits for break-in-service employees.  Since reliance is a key element of ERISA disclosure violations, see Bachelder, 837 F.2d at 522-23, Raytheon could not have been expected to know that "a new issue was infiltrating the case," DCPB, 957 F.2d at 917.

We adopt the district court's reasoning and hold that there was no abuse of discretion in denying Mauser's post-trial motion to amend his complaint.

AFFIRMED IN PART AND REVERSED IN PART

-18-