# United States Court of Appeals
## For the First Circuit

No. 06-1957

DIANE TODISCO,

Plaintiff, Appellant,

v.

VERIZON COMMUNICATIONS, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Torruella and Lynch, Circuit Judges,
and Lisi,[*] District Judge.

James B. Dolan, with whom Badger, Dolan, Parker & Cohen was on brief, for appellant.
Khuong G. Phan, with whom Karen M. Wahle and O'Melveny & Myers LLP were on brief, for appellee.

August 6, 2007

_____

[*] Of the District of Rhode Island, sitting by designation.

**LYNCH**, **Circuit Judge**.  This case, arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, involves an unfortunately frequent scenario. The defendant's ERISA plan documents and Summary Plan Description are clear in their terms as to plan benefits.  Nonetheless, a representative of the plan sponsor gave an employee incorrect information.  The employee claims to have relied on the information provided; the company refuses to pay benefits on the grounds that there was a failure to comply with the terms of the plan documents. See Law v. Ernst & Young, 956 F.2d 364, 368-72 (1st Cir. 1992); Florence Nightingale Nursing Servs. v. Paul Revere Life Ins. Co., No. 94-1754, 1995 U.S. App. LEXIS 17506, at *9 (1st Cir. July 19, 1995); see also, e.g., Mello v. Sara Lee Corp., 431 F.3d 440, 442-43 (5th Cir. 2005); Frahm v. Equitable Life Assurance Soc'y of the U.S., 137 F.3d 955, 956-57 (7th Cir. 1998); HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross, 101 F.3d 1005, 1006-08 (4th Cir. 1996); Greany v. W. Farm Bureau Life Ins. Co., 973 F.2d 812, 814-16, 822 (9th Cir. 1992).  A variant on this fact pattern occurs when the company representative fails to give information about the options that are available.  See, e.g., Watson v. Deaconess Waltham Hosp., 298 F.3d 102 (1st Cir. 2002).

In this case, Diane Todisco filed suit to obtain supplemental life insurance benefits from defendant Verizon Communications, Inc., based on an election made by her now-deceased

-2-

husband, Richard Todisco.  Mr. Todisco made that election in reliance on incorrect information that Verizon provided to him orally over Verizon's telephone hotline.  The essence of Mrs. Todisco's present claim is that equitable estoppel should operate to force Verizon to pay benefits.

The district court dismissed the suit on the pleadings, and then denied a motion to amend on the grounds of futility. Following Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204 (2002), and Mertens v. Hewitt Associates, 508 U.S. 248 (1993), the district court concluded that Mrs. Todisco did not seek "appropriate equitable relief" that could be awarded under ERISA's section 502(a)(3).  We affirm.

I.

This case is on appeal from the district court's denial of plaintiff's motion to file a third amended complaint.  We describe the facts as set out in that proposed complaint.

For many years, Mr. Todisco worked as an employee of Verizon and its predecessor companies, which we collectively refer to as "Verizon."  Under Verizon's ERISA-covered benefit plan, Mr. Todisco was automatically enrolled in a "Basic Life Insurance Policy" with an $88,000 death benefit.  Mrs. Todisco was named the beneficiary on that policy.

Verizon maintained a telephone hotline for employees who had questions about employee benefit programs.  On several

-3-

occasions between November 1999 and January 2000, Mr. Todisco called this hotline to ask questions about his options for adding supplemental life insurance.  He was informed that during an "open enrollment period," he had the right to increase the level of his insurance benefits to $176,000 without submitting any statement of his current health.  Based on this information, Mr. Todisco elected to purchase the supplemental coverage, and he named his wife as the beneficiary on this additional coverage.  He did not submit a statement of health.[1]  Additionally, in reliance on Verizon's statements, Mr. Todisco removed his wife as the beneficiary on his basic life insurance policy and replaced her with his two daughters.  At the time Mr. Todisco made these decisions, he suffered from serious mental and physical health problems.  It is not clear whether he could have submitted a statement of health that would have been adequate to render him eligible for supplemental life insurance.

Mr. Todisco died shortly after making these decisions, and Verizon later paid the $88,000 basic life insurance benefit to Mr. Todisco's daughters. However, Verizon did not pay Mrs. Todisco the additional $88,000 in supplemental insurance benefits; its basis for this was that Mr. Todisco had failed to comply with the

---

[1] There are no allegations that Mr. Todisco ever paid any premiums for this supplemental life insurance.  Evidence submitted at earlier stages in the case suggested that premiums were not being withheld from Mr. Todisco's paycheck, which prompted Mr. Todisco to make additional calls to Verizon's hotline.

terms of its benefits plan, which required Mr. Todisco to fill out a statement of health form in order to be eligible for supplemental insurance.

In October 2001, Mrs. Todisco sued Verizon in state court on a state law claim for breach of contract. Verizon removed the case to federal district court. On July 30, 2002, the suit was dismissed as preempted by ERISA after plaintiff refused to stipulate that her claim should be treated as an ERISA claim.[2]

Mrs. Todisco then filed a motion to vacate the judgment, which the district court granted, and on October 31, 2002, she filed an amended complaint asserting a claim for breach of fiduciary duty under ERISA. Some nineteen days later, Mrs. Todisco filed a second amended complaint, this one adding a claim under ERISA for reformation of the plan documents and seeking benefits under the reformed plan documents. Over Verizon's objection, the district court permitted the filing of this second amended complaint. Verizon did not dispute that the second amended complaint stated a claim for breach of fiduciary duty.

Verizon moved for judgment on the pleadings, which the district court granted on August 25, 2004.[3] In a cogent opinion,

---

[2] Mrs. Todisco makes no claim on appeal that the state law claim is not preempted.

[3] In the motion's "statement of facts" section, Verizon noted the second amended complaint's allegation that Mr. Todisco had been given wrong information, and Verizon further noted that plaintiff was not claiming any entitlement to benefits under the plan. In

the court ruled that the facts plaintiff described could not entitle her to the reformation remedy that she sought or to an award of money damages. The court nonetheless stated that it would give Mrs. Todisco the opportunity to try and advance a claim for equitable estoppel, and so the court granted her leave to file a motion to amend the complaint for this purpose.

Mrs. Todisco filed such a motion on October 29, 2004, and her proposed third amended complaint requested that Verizon pay her the $88,000 in supplemental life insurance benefits. But while the proposed complaint contained a claim for equitable estoppel, it also set out a separate claim that Mrs. Todisco was in fact entitled to benefits under the plan's terms. At an oral hearing, the district court remarked that this second claim went beyond the scope of the court's leave, and that it was "inconsistent with all of [plaintiff's] previous allegations." Counsel clarified that Mrs. Todisco was not claiming that she was actually entitled to benefits under the plan, but rather that she sought estoppel to

response, Mrs. Todisco stated that she largely agreed with Verizon's characterization of her allegations, although she clarified that she was claiming that she was entitled to plan benefits if the court granted her request to reform the plan documents. Mrs. Todisco did not otherwise contend that the plan terms were subject to an interpretation under which she would be eligible for benefits. When the district court granted Verizon's motion, its description of the facts included the statement that "[u]nder the written terms of the plan, [Mr. Todisco] was not entitled to the additional coverage without supplying a statement of health. This had not been done."

alter the plan terms; she believed she was entitled to benefits under those altered terms.

The district court denied the plaintiff's motion to amend because it would be futile. First, the court explained that plaintiff was seeking compensatory monetary damages, not equitable relief. Relying on the Supreme Court's decision in Great-West, the district court held that the requested award of damages could not be granted under ERISA's section 502(a)(3). Second, the court explained that Mrs. Todisco's estoppel claim failed for an independent reason. In the court's view, an ERISA plaintiff could only assert a claim for equitable estoppel when the defendant's misrepresentation concerned a plan provision about which there could be reasonable disagreement. Otherwise, any reliance by the plaintiff would be unreasonable. Since Verizon's plan was not ambiguous, the court concluded that Mrs. Todisco's claim was not viable.

Mrs. Todisco timely appealed. She argues only that the denial of her motion to amend was erroneous.

II.

When a district court denies a motion for leave to amend the complaint, our review is for abuse of discretion. Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 418 (1st Cir. 2007); see also Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006) (an error of law is an abuse of

discretion).  In our review, we must defer to the district court "for any adequate reason apparent from the record."  Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994).  Futility of the amendment constitutes an adequate reason to deny the motion to amend.  Adorno, 443 F.3d at 126.  The motion may also be denied if a proffered amendment comes "too late," or if it "otherwise would serve no useful purpose."  Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 58 (1st Cir. 2006).  The district court did not abuse its discretion in this case.

A.          The ERISA Remedial Scheme

ERISA is a "comprehensive and reticulated statute," Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 361 (1980), which reflects significant congressional study and compromise.  Mertens, 508 U.S. at 251, 262-63.  Within that compromise, ERISA's section 502, 29 U.S.C. § 1132, governs civil enforcement.  See Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 139-40 (1985).  Two provisions in section 502 are at the heart of this case.

Section 502(a)(1)(B) empowers a "participant or beneficiary" to bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Section 502(a)(3) allows a "participant, beneficiary, or fiduciary" to sue "(A) to enjoin

any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Id. § 1132(a)(3).

Mrs. Todisco contends that in seeking to apply equitable estoppel, she is simply seeking "appropriate equitable relief" within the meaning of section 502(a)(3)(B). In the alternative, she contends that equitable estoppel should operate to allow her to seek benefits due to her under the terms of her plan within the meaning of section 502(a)(1)(B).

B.      The Section 502(a)(3)(B) Claim

Mrs. Todisco's first argument is foreclosed by Supreme Court precedent.[4]  In Mertens, the Court interpreted the phrase "appropriate equitable relief" to exclude claims for compensatory monetary damages, which the Court deemed a classic form of legal relief.  See 508 U.S. at 255.  The Court held that the phrase referred "to those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)."  Id. at 256.

---

[4] Several of our decisions have assumed, without deciding, that a claim for equitable estoppel is viable in this circuit. Those cases proceeded to reject those claims on the facts presented.  See, e.g., Mauser v. Raytheon Co. Pension Plan for Salaried Employees, 239 F.3d 51, 57 (1st Cir. 2001) (noting that the issue remains open in this circuit); Law, 956 F.2d at 371 n.9.

This interpretation was further confirmed by Great-West, which held that even certain forms of restitution do not constitute "equitable relief" within the meaning of section 502(a)(3)(B). 534 U.S. at 214. Great-West involved a claim for restitution that the Court characterized as an attempt to "impos[e] personal liability on [defendants] for a contractual obligation to pay money." Id. at 221. Great-West held that despite the invocation of "restitution," the claim was still essentially an action at law. Id. at 213-14. The Court distinguished suits for equitable restitution, which it described as suits that aimed to "restore to the plaintiff particular funds or property in the defendant's possession." Id. at 214 (emphasis added); cf. Sereboff v. Mid Atl. Med. Servs., 126 S. Ct. 1869, 1874 (2006) (finding that when a plaintiff seeks "recovery through a constructive trust or equitable lien on a specifically identified fund, not from the [defendants'] assets generally," the suit is one for equitable restitution and thus permissible under section 502(a)(3)(B)). Although Mrs. Todisco asserts that Great-West has subsequently been overruled by the Court's decision in Sereboff, that is plainly incorrect. Sereboff explicitly distinguished Great-West on the grounds that the plaintiff in Great-West did not seek equitable restitution, as that plaintiff had not sought the recovery of specifically identifiable funds in the possession of the defendant. See 126 S. Ct. at 1873-74.

Under Mertens and Great-West, Mrs. Todisco plainly seeks legal relief: she seeks nothing less than the imposition of liability on Verizon, in the form of compensatory monetary damages, because of Verizon's failure to honor the oral representation it made to her husband that he did not need to submit a statement of current health in order to obtain supplemental life insurance. Accord Slice v. Sons of Nor., 34 F.3d 630, 632-33 (8th Cir. 1994) (finding that an equitable estoppel claim was foreclosed by Mertens because it sought compensatory monetary damages); Watkins v. Westinghouse Hanford Co., 12 F.3d 1517, 1527-28 (9th Cir. 1993) (same); see also Armstrong v. Jefferson Smurfit Corp., 30 F.3d 11, 13 (1st Cir. 1994) (holding that after Mertens, compensatory legal damages do not constitute "appropriate equitable relief").

Nor does it matter that Mrs. Todisco claims to be seeking reliance damages (i.e. the $88,000 in benefits that she lost when her husband removed her as the beneficiary on his basic life insurance policy), rather than expectation damages. That claim for reliance damages is still a claim for compensatory monetary damages. It also does not resemble the kinds of relief that Mertens and Great-West have classified as equitable. See Callery v. U.S. Life Ins. Co. in the City of N.Y., 392 F.3d 401, 405-06 (10th Cir. 2004). Indeed, reliance damages could not have been "typically available in equity," Great-West, 534 U.S. at 211, as the very idea of recovery for reliance damages lacked a firm

conceptual footing until after the era of the divided bench. Compare C. McCormick, The Fusion of Law and Equity in United States Courts, 6 N.C. L. Rev. 283, 284 (1928) (noting that the merger of law and equity was largely complete by 1928), with L. Fuller & W. Perdue, The Reliance Interest in Contract Damages, 46 Yale L.J. 373, 418-19 (1937) (arguing, in a 1937 law review article often credited as cohering the modern concept of reliance damages, that the law ought to explicitly recognize the award of reliance damages), and W. Slawson, The Role of Reliance in Contract Damages, 76 Cornell L. Rev. 197, 198-202 (1990) (tracing the modern understanding of reliance damages to discussions over the Restatement (First) of Contracts, which was published in 1932). See also 3 Pomeroy's Equity Jurisprudence § 813, at 234 (5th ed. 1941) (stating that equitable estoppel "operates to put the party entitled to its benefit in the same position as if the thing represented were true"); Fuller & Perdue, supra, at 406 (noting that then-contemporary authorities assumed that recovery on an estoppel theory would be for expectation damages).

In the face of this adverse authority, Mrs. Todisco suggests that our circuit has nonetheless permitted contrary results. Citing Glista v. UNUM Life Insurance Co. of America, 378 F.3d 113 (1st Cir. 2004), and Bard v. Boston Shipping Ass'n, 471 F.3d 229 (1st Cir. 2006), plaintiff contends that this court has

taken a more "latitudinarian attitude" to the phrase "appropriate equitable relief."

Mrs. Todisco misreads these cases. Both Glista and Bard involved only claims for benefits due under the plan. See Bard, 471 F.3d at 234; Glista, 378 F.3d at 119. Neither of those cases comes within the compass of either Mertens or Great-West, as this case does. These cases do not stand for the proposition that compensatory monetary damages are "appropriate equitable relief" under section 502(a)(3)(B). They hold only that when a court is confronted with a claim for benefits pursuant to section 502(a)(1)(B), the court may invoke certain substantive equitable principles, in certain narrow factual circumstances, in order to adjudicate that claim for benefits. Cf. 1 D. Dobbs, Law of Remedies § 2.1(3), at 62-66 (2d ed. 1993) (distinguishing the concept of an "equitable remedy," which refers to the kinds of relief traditionally accorded in courts of equity, with "substantive" equity, which refers to certain principles of substantive law that could be described as fair or just); id. § 2.3(5), at 84 (characterizing equitable estoppel as fitting within the rubric of "substantive equity").

C.      The Section 502(a)(1)(B) Claim

Mrs. Todisco's alternative theory tries to recast her claim as one for benefits under section 502(a)(1)(B). This theory entails two steps. First, she asks us to invoke equitable estoppel

-13-

based on Verizon's misrepresentations to her husband.  As she envisions it, this would bar Verizon from asserting that a statement of health form was required during an open enrollment period.  Second, Mrs. Todisco asks us to allow her to claim, under a reformulated plan, the benefits that were promised to her husband.  With Verizon barred from invoking the actual language of its plan, she believes that this claim will be successful.

This approach is not permitted by ERISA's text.  Section 502(a)(1)(B) allows a plaintiff to sue only for benefits "due to him under the terms of his plan."  29 U.S.C. § 1132(a)(1)(B) (emphasis added).  Here, the plan unambiguously stated that Mr. Todisco was ineligible to add supplemental life insurance without submitting a statement of health form.[5]  Since it is undisputed that he never submitted this form, Mrs. Todisco's claim for benefits is plainly not a suit for benefits under the terms of the plan.  Instead, she expressly seeks benefits not authorized by the plan's terms.

---

[5] In her proposed third amended complaint, Mrs. Todisco alleges that the plan terms are ambiguous as to open enrollment periods.  However, we understand the district court to have essentially disregarded this allegation as beyond the scope of the court's permission, and/or as inconsistent with the plan documents themselves (which had been provided to the court at earlier stages in the case).  We see no abuse of discretion in the court's decision to deem the plan terms unambiguous for purposes of adjudicating the motion for leave to amend.  Indeed, while plaintiff's counsel pointed out to the district court that there was an allegation of ambiguity, counsel also told the court: "I guess if you've got the plan, you can look at it."

In a case decided post-Mertens, but before Great-West, the Ninth Circuit invoked this same reading of section 502(a)(1)(B); the court accordingly rejected an attempt by several plaintiffs to circumvent the fact that their equitable estoppel claim was foreclosed by Mertens. See Watkins, 12 F.3d at 1527-28. The Eighth Circuit has also reasoned similarly. See Slice, 34 F.3d at 631-32 & n.5.

Mrs. Todisco contends that this circuit's decisions in Glista and Bard have approved the kind of two-step process she seeks here. She is wrong.

In Glista, the plaintiff brought a claim for disability benefits after the defendant plan administrator denied plaintiff's claim in administrative proceedings. See Glista, 378 F.3d at 119. Throughout the administrative proceedings, the defendant had relied on one plan provision as its basis for denying benefits. Id. at 118-19. Once the case went to litigation, the defendant additionally argued that benefits were barred based on a different plan provision. Id. at 119-20. After reviewing ERISA's notice regulations, the burdens of proof in traditional insurance law, the plan's own notice requirements, the fact that the defendant had not justified its earlier failure to inform the plaintiff about this alternative ground for denial, and the plaintiff's need for a resolution, we invoked certain equitable considerations to bar the

defendant from relying on its newly-articulated rationale. See id. at 128-32.

Bard also involved a plaintiff who sued the defendant plan after it denied his claim for disability benefits. Through most of the administrative proceedings, the defendant plan repeatedly failed to comply with ERISA's notice requirements, with the result that the plaintiff was initially unaware that the defendant interpreted an ambiguous plan term in a manner that differed from the plaintiff's reasonable understanding. Bard, 471 F.3d at 237-40. As a result, the plaintiff believed that the plan did not require him to have become disabled before his employment ended, and he submitted medical evidence showing that he became totally disabled after his termination. Id. at 241. When the plan belatedly informed him of its differing view of the plan terms, the plaintiff submitted new medical evidence in support of his claim, which the plan then rejected as not consistent with the plaintiff's earlier submissions. Id. at 241-43. Based on these facts, as well as a plethora of ERISA regulatory violations, we cited Glista and invoked equitable principles to undo the prejudice that resulted from the defendant's ERISA violations: we barred the defendant from relying on the earlier medical evidence submitted. Id. at 244-45. Because the plaintiff's remaining evidence showed that he was entitled to benefits under the defendant's interpretation of the plan, we ordered an award of benefits. Id. at 245-46.

-16-

Both Glista and Bard put significant weight on the fact that the plan's administrative claims process had been appreciably compromised by the defendants. See id. at 244-45; Glista, 378 F.3d at 128-30. Here there is no allegation that Verizon denied benefits to Mrs. Todisco on a rationale different than what Verizon stated to her, nor is there an allegation that Verizon has otherwise failed to comply with ERISA's regulatory requirements for claims proceedings.

There is an even more fundamental problem with Mrs. Todisco's reliance on Glista and Bard. To the extent that both decisions employed "equitable" principles en route to an award of benefits under section 502(a)(1)(B), both did so in the context of reasonable claims that the plaintiff was actually entitled to benefits under the terms of the plan documents. Mrs. Todisco's claim is entirely different. Because the plan's language is clear, and because Mr. Todisco indisputably did not take the actions that this language required, plaintiff cannot reasonably claim that her suit is a suit for benefits due under the terms of the plan. Accordingly, section 502(a)(1)(B) does not permit Mrs. Todisco's suit.

III.

In the end, Mrs. Todisco's argument amounts to a claim that on the facts of her case, she must be entitled to some sort of ERISA remedy. That claim may have particularly sympathetic appeal

in light of ERISA's broad preemption of state remedies.  See Aetna Health Inc. v. Davila, 542 U.S. 200, 222 (2004) (Ginsburg, J., concurring) (expressing dismay that the Court's narrow construction of the term "equitable relief," coupled with ERISA's broad preemptive force, has created a troubling legal void for persons affected by ERISA wrongdoings).  Nonetheless, the Supreme Court has unambiguously held that such considerations may not overcome ERISA's textual commands.  See Great-West, 534 U.S. at 220-21.

The judgment of the district court is affirmed.  No costs are awarded.